**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Dennis BURKE, Defendant-Appellant.**

### No. 85–1289.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 31, 1985.

Decided Dec. 11, 1985.

Rehearing Denied Jan. 8, 1986.

Edward M. Genson, Genson & Steinback, Jeffrey B. Steinback, Chicago, Ill., for defendant-appellant.

Michael T. Mullen, Asst. U.S. Atty., Charles B. Sklarsky, Chicago, Ill., of counsel, for plaintiff-appellee.

Before BAUER, POSNER and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

*United States v. Donnelly*, 179 F.2d 227, 233 (7th Cir.1950), holds that when a defendant introduces evidence of his good character, the jury should be told that "character evidence may in itself be sufficient to create in the minds of the jury a reasonable doubt at to the guilt of the defendant." Instruction 3.15 of this circuit's pattern jury instructions incorporates the requirement of *Donnelly*. Every other court of appeals that has spoken on the question has concluded that such an instruction gives undue weight to character evidence. The district court, agreeing with this perspective, refused to give pattern instruction 3.15. Today we join the other courts of appeals. We overrule *Donnelly* and affirm the conviction.[1]

I

The jury convicted Burke of extortion and attempted extortion, in violation of 18 U.S.C. § 1951. He received fines aggregating $30,000, nine months in a work release program, and five years' probation on condition that he cease being a private investigator. His investigation business led him to ruin.

The facts, which we recount as we must in a light favorable to the prosecution, showed that in April 1984 Thomas Clark, one of Burke's neighbors, told Burke that Illinois Bell Telephone Co. had received a subpoena from a federal grand jury in Alabama. The grand jury was interested in the business of Capitol Lighting Products, a firm of which Clark was president. Capitol apparently made extensive use of the interstate phone system to sell its products.

Clark asked Burke—who had been an officer of the Chicago Police Department before becoming a private investigator in 1976—what the subpoena meant. Burke replied that he knew the FBI agent in charge of the investigation and had been told that the grand jury was investigating violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., violations that Burke assured Clark could allow the government to take Clark's home, business, "and everything." Clark did not find this assuring at all. He volunteered that if the grand jury was investigating Capitol Lighting, it was probably also investigating Midwest Industrial Lighting Co., a firm using similar business methods run by Clark's former partner Michael Noonan. Burke obtained some information about Noonan, promised to check out his situation, and insisted that Clark visit an attorney of Burke's choice.

Burke conveyed an accurate picture of the sanctions under RICO. See *United States v. Ginsburg*, 773 F.2d 798 (7th Cir. 1985) (en banc). That was, however, his only truthful statement. He knew nothing about the investigation, which ultimately did not produce indictments and never had been concerned with RICO. He did not know either the prosecutor or the responsible agents; he never talked to any of them. But Burke spun out the tale in subsequent meetings with Clark and Noonan. Burke told both that they had to pay him (or the attorney) substantial sums so that he could pay off the FBI agent in charge of the investigation, an agent who Burke claimed as a friend and who, Burke threatened, had already obtained sealed indictments against both Clark and Noonan.

Burke insisted that Clark and Noonan not talk to each other. Then he told Clark that Noonan's firm was the prime target, so that Clark could escape jeopardy for only $15,000—$10,000 for the agent and $5,000 for Burke. Clark eventually gave a check for $5,000 to the lawyer and started raising the other $10,000. Burke told Noonan that he could have Noonan's indict-

---

1. Because this decision overrules another case of this circuit, it was circulated to all judges in regular active service. See Circuit Rule 16(e).

No judge favored rehearing en banc on the question of overruling *Donnelly*.

ment taken care of for $70,000. By the time Burke and Noonan met, however, Noonan was wearing a concealed tape recorder furnished by the FBI. Shortly after this meeting Noonan told Clark that Burke was a fraud. Clark stopped payment on his check to the lawyer and told Burke that he was backing out. Noonan and Burke had one more conversation; this, too, was recorded. Burke told Noonan that he would "have front row seats and be able to see exactly what would have happened if he did not pay the money." The payoff, said Burke, was now "72 firm" ($72,000), and the FBI agent had agreed to all terms.

His threats and inducements on tape for all to hear, Burke did not deny that he had demanded money from Clark and Noonan. His defense was that he was trying to lead Clark and Noonan on, to find out why they were willing to pay so much money to escape indictment. Once he figured out what Clark and Noonan were up to, Burke maintained, he planned to turn them over to the FBI for prosecution. He asserted that this would have been a public relations bonanza, promoting his investigations business.

A public relations agency might have questioned a strategy of angling for new clients by proclaiming that you have just sold your old ones down the river. Doubtless Burke was not planning to use testimonials to attract business. However that may be, the jury did not believe that Burke was a publicity-seeker determined to root out crime. It convicted him on all counts.

## II

Burke called ten character witnesses, all affiliated with law enforcement. Some knew Burke socially, some had worked with him professionally. All testified that he had a reputation for truthfulness and abiding by the law; some testified that he had given aid in enforcing the law. Burke then took the stand and gave his explanation for his dealings with Clark and Noonan.

Burke asked the district judge to read pattern instruction 3.15 to the jury. The instruction states: "You should consider character evidence together with and in the same manner as all the other evidence in the case. Character evidence alone may create a reasonable doubt of the defendant's guilt." The district judge declined to give the instruction. She replaced the second sentence with: "Character evidence may be considered by you in determining whether the Government has proven the defendant's guilt beyond a reasonable doubt." The judge allowed Burke's lawyer to argue his theory of defense to the jury and to point out the role character evidence played in that theory.

Burke objected to the judge's modification of instruction 3.15, pointing to the advisory committee's note, which states in part: "The Committee recommends giving the standing alone instruction in all instances in which character evidence is introduced. First, the United States Supreme Court arguably has sanctioned its use in *Edgington v. United States*, 164 U.S. 361 (1896), and *Michelson v. United States*, 335 U.S. 469 (1948). Second, and most importantly, the courts have failed to define with particularity the instances in which the instruction concededly must be given. Accordingly, the exclusion of the 'standing alone' language from the character evidence instruction creates an unnecessary issue."

Judge Getzendanner disagreed with the committee's comment. She explained: "In this case it would be particularly inappropriate to give that standing-alone kind of instruction because here the defendant has testified. And if the jury believes that the defendant is lying, then one could not conceivably acquit him on the basis of the character testimony.... I think that it would be a tremendous point of confusion to the jury to say that even though they disbelieved the defendant they may acquit him because he has a reputation for being law-abiding."

This reasoning is exactly right.[2] The "standing alone" instruction conveys to the jury the sense that even if it thinks the prosecution's case compelling, even if it thinks the defendant a liar, if it also concludes that he has a good reputation this may be the "reasonable doubt" of which other instructions speak. A "standing alone" instruction invites attention to a single bit of evidence and suggests to jurors that they analyze this evidence all by itself. No instruction flags any other evidence for this analysis—not eyewitness evidence, not physical evidence, not even confessions. There is no good reason to consider *any* evidence "standing alone."

If a jury ever should be told to consider evidence in isolation, character evidence is the wrong kind to single out. It is usually inadmissible, because it is usually off the point. It does not speak to the question whether the accused committed the crime. People of impeccable reputation may commit crimes, and when they are charged with crime the question is whether they did it, not whether they enjoy a high social standing. Fed.R.Evid. 404(a) declares that as a rule character evidence is not admissible. Although the defendant may introduce the evidence (giving the prosecutor the right to put in more in reply), this dispensation is not based on a strong belief that the evidence is probative. The Advisory Committee's note to Rule 404 states: The "circumstantial use of character evidence raises questions of relevancy as well as questions of allowable methods of proof.... [The] basis [of the rule] lies more in history and experience than in logic ... In any event, the criminal rule is so deeply embedded in our jurisprudence as to assume almost constitutional proportions and to override doubts of the basic relevancy of the evidence." Character evidence is a dispensation from the ordinary rules of evidence, and a curious dispensation it is. It aids exclusively the well-connected. This is not a dispensation that should be given extra weight by being singled out for special status among all the kinds of evidence a jury hears.

The "standing alone" instruction could readily be understood by the jury as permission (even as command) to acquit a defendant of good general character, even if the jurors are convinced that the defendant committed the acts with which he was charged. The instructions should not send this message. They should keep the jury's focus squarely on what matters—did the defendant commit the acts charged, with the necessary mental state?

This is not to say that jurors should not consider character evidence. Rule 404(a)(1) says that they may. Because the evidence is not linked directly to guilt or innocence, however, it is also usually helpful for the court to tell the jurors what character evidence is for. In a case such as this the evidence has two uses. First, Burke's

---

**2.** Right, that is, if the district judge was free to pursue the line of inquiry. A judge is not entitled to give whatever instructions she prefers as a matter of first principles. She must follow the decisions of this court even if she believes them profoundly wrong. *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983); *Hutto v. Davis,* 454 U.S. 370, 375, 102 S.Ct. 703, 706, 70 L.Ed.2d 556 (1982). Although the pattern instructions are suggestive rather than absolutely binding, a decision of this court is authoritative. A court need not blindly follow decisions that have been undercut by subsequent cases, however. See *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354, 357–61 (7th Cir.1983) (en banc); *Norris v. United States,* 687 F.2d 899, 902–03 (7th Cir.1982); cf. *Limbach v. Hooven & Allison Co.,* 466 U.S. 353, ——, 104 S.Ct. 1837, 1841–43, 80 L.Ed.2d 356 (1984). In a criminal case an instruction such as 3.15 could escape review. If the judge follows *Donnelly* and gives the instruction, the defendant suffers no prejudice and cannot complain; if the jury acquits the defendant because of the instruction, the prosecution cannot appeal. We believe that recent decisions (see note 4 *infra*) have distinguished *Donnelly* on such thin grounds as to undermine its foundations, and other circuits (including the one on which we relied in *Donnelly*) have reversed their own positions. The district court therefore had an adequate basis for believing that this court would no longer follow *Donnelly,* and she acted responsibly in modifying instruction 3.15 in a way that put the question squarely before us. To repeat, however: but for the events that have occurred since *Donnelly,* the district judge's action would not have been proper.

credibility is in issue. Do the jurors believe his story that he was trying to generate publicity by setting up Clark and Noonan? Evidence that Burke is reputed to tell the truth may help the jurors determine whether he told the truth on the witness stand. Second, extortion exposes Burke not only to criminal sanctions but also to loss of professional standing and reputation. Loss of face and future business opportunities is an automatic penalty for wrong-doing. A person of high standing and reputation has more to lose than a person of no account. The jurors are entitled to infer that a person with a solid professional reputation, and therefore with much to lose, is less likely to risk his career in a criminal escapade than is a person with no future in the legitimate world.

■ The court therefore should tell the jurors that they may use reputation evidence to help evaluate the truthfulness of the defendant's testimony and to help evaluate the credibility of the innocent explanation he offers for his acts. In a close case these considerations may tilt the balance. Reputation evidence thus may create a reasonable doubt. Yet any bit of evidence may have this effect. There is no reason to tell the jury that reputation evidence has some special ability to create a reasonable doubt; it does not. (We do not decide, however, that an instruction addressing character evidence in particular is essential in every case. Some cases are concerned more with documents than with credibility, and in these it may be unnecessary to give any special instruction.)

*Donnelly* considered none of this. It simply recited that the defendant proposed an instruction under which character evidence "may in itself be sufficient to create in the minds of the jury a reasonable doubt," remarked that the case turned largely on the appraisal of the defendant's credibility, and concluded: "We think the instruction formally requested by the defendant should have been given." 179 F.2d at 233. The court also quoted this passage from *Edgington v. United States, supra,* 164 U.S. at 366, 17 S.Ct. at 73:

Whatever may have been said in some of the earlier cases, to the effect that evidence of the good character of the defendant is not to be considered unless the other evidence leaves the mind in doubt, the decided weight of authority now is that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt. The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing.

■ This passage does not support an instruction that singles out character evidence. The Court was trying to put an end to instructions that had disfavored character evidence by telling the jury not to consider the evidence unless it first found the case close. The point of the passage—that character evidence when taken with other evidence may create a reasonable doubt— assimilates character evidence to other kinds of evidence. It is a mistake to lift language out of a passage such as this and insert it in a jury instruction. Language in judicial opinions is not meant to be given undigested to a jury. See *W.T. Rogers Co. v. Keene,* 778 F.2d 334, 344 (7th Cir.1985). Legal terms are hard enough for lawyers to understand; ripped from their context and presented to lay deciders, passages from opinions may do nothing but confound. It is always necessary for the judge to put the thought in language that those who see the inside of a court only once in a lifetime can understand.

*Michelson v. United States, supra,* the other case that appears in the notes of the advisory committee on our pattern jury instructions, also does not support a "standing alone" instruction. The full passage in *Michelson* reads: "[The defendant] may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged. This privilege is sometimes valu-

able to a defendant for this Court has held that such testimony alone, in some circumstances, may be enough to raise a reasonable doubt of guilt and that in the federal courts a jury in a proper case should be so instructed. *Edgington v. United States,* 164 U.S. 361 [17 S.Ct. 72]." 335 U.S. at 476, 69 S.Ct. at 218. Nothing in this passage says that character evidence should be singled out for special attention by juries. It simply states that "in some circumstances"—presumably those where the case is close—character evidence alone may push things over the line of reasonable doubt. Unquestionably true, but it does not imply any particular instruction.

There is also less here than meets the eye. The passage was dictum. The question before the Court was whether the prosecutor may introduce specific instances of bad conduct in response to the defendant's character evidence. And this passage in *Michelson* does not correctly state the holding of *Edgington.* The instruction under review in *Edgington* told the jury to disregard character evidence unless it thought the question close. The defendant objected and argued that character evidence "should be considered by the jury in connection with all of the evidence as to whether or not on all the evidence there is a reasonable doubt." 164 U.S. at 365, 17 S.Ct. at 73. The Court thought the point well taken. *Id.* at 365–67, 17 S.Ct. at 73–74. *Edgington* did not suggest that the instruction should *say* that character evidence be considered in a special way by the jury; to the contrary it quoted at length from and cited cases holding that character evidence should simply be considered with other evidence. *Edgington* told the federal courts to eliminate differences in the treatment of character and other evidence, not to create new differences.

■ Other courts of appeals have concluded that neither *Edgington* nor *Michelson* supports an instruction giving special weight to character evidence. Indeed, several circuits have *forbidden* "standing alone" instructions on the ground that they mislead the jury. We collect illustrative cases in a note.[3] Even within this circuit *Donnelly* has become the exception in practice although it remains (through pattern instruction 3.15) the stated norm. We have found creative ways to excuse a district court's refusal (more often neglect) to give the "standing alone" instruction.[4]

---

**3.** See *United States v. Winter,* 663 F.2d 1120, 1146–49 (1st Cir.1981) ("standing alone" instruction disapproved in all cases); *United States v. Lowenthal,* 224 F.2d 248, 249 (2d Cir.1955) (generally improper, but cf. *United States v. Cramer,* 447 F.2d 210, 219 (2d Cir.1971) (instruction should have been given, although its omission was harmless)); *United States v. Klass,* 166 F.2d 373, 378–80 (3d Cir.1948) (en banc) (unnecessary); *United States v. Logan,* 717 F.2d 84, 88–91 (3d Cir.1983) (improper, although the defendant has a right to an instruction providing effective guidance); *Mannix v. United States,* 140 F.2d 250, 253–54 (4th Cir.1944) (improper); *United States v. Callahan,* 588 F.2d 1078, 1085 (5th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979) (unnecessary except in special circumstances); *United States v. Ruppel,* 666 F.2d 261, 272–74 (5th Cir.), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982) (unnecessary; consider character evidence on a par with other evidence); *Poliafico v. United States,* 237 F.2d 97, 114 (6th Cir.1956), *cert. denied,* 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957) (unnecessary; consider character evidence on a par with other evidence); *Black v. United States,* 309 F.2d 331, 343–44 (8th Cir. 1962), *cert. denied,* 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed.2d 765 (1963) (disapproved in all cases); *Carbo v. United States,* 314 F.2d 718, 746 (9th Cir.1963), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964) (unnecessary); *Oertle v. United States,* 370 F.2d 719, 727 (10th Cir.1966), *cert. denied,* 387 U.S. 943, 87 S.Ct. 2075, 18 L.Ed.2d 1329 (1967) (unnecessary except in certain circumstances); *United States v. Borders,* 693 F.2d 1318, 1328–30 (11th Cir.1982), *cert. denied,* 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983) (unnecessary; consider character evidence on a par with other evidence); *Smith v. United States,* 305 F.2d 197 (9th Cir. 1962) (unnecessary except in special circumstances). Our opinion in *Donnelly* cited the Tenth Circuit, which once required the "standing alone" instruction. See *Johnson v. United States,* 269 F.2d 72 (10th Cir.1959). *Oertle* abandons this position, leaving *Donnelly* without visible means of support.

**4.** E.g., *United States v. Hyman,* 741 F.2d 906, 910 (7th Cir.1984); *United States v. Picketts,* 655 F.2d 837, 842 (7th Cir.), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981); *United States v. Ming,* 466 F.2d 1000, 1007 (7th Cir.), *cert. denied,* 409 U.S. 915, 93 S.Ct. 235, 34 L.Ed.2d 504 (1972).

*Donnelly* survives only as a source of confusion, and our willingness to affirm in cases in which the instruction was not given has dashed the hope of the advisory committee on our pattern instructions that instruction 3.15 would put an end to litigation on this subject. We conclude, for the reasons we have explained, that the "standing alone" instruction misleads a jury in a case such as this. The district judge properly declined to give it.[5]

■ We do not require a particular instruction on character evidence. The crafting of instructions is within the province of the district courts. It is sufficient if they tell jurors the importance of character evidence in light of the contentions of the parties in the case at hand. The instruction of the district judge here, which assimilated character evidence to other evidence, did so.

## III

Burke offered not only character testimony but also evidence that in earlier years he had assisted the FBI. He wanted to show specific occasions on which he provided information to the Bureau. Evidence of prior acts usually is inadmissible, but it may be used to show intent. Fed.R.Evid. 404(b). Burke put intent in issue by contending that he planned to squeal on his clients, and a demonstration that he had given tips and leads to law enforcement officials in the past might support this version of events. The district court, however, excluded the evidence.

■ This is a troubling decision. The evidence tended to support Burke's de-fense. The defense may have been incredible, but it did present an issue for the jury to consider. The exclusion of the evidence denied Burke the ability to counter a damning admission that the jury heard when, as Rule 404(a)(1) permits, the government countered Burke's character evidence with some evidence of bad character. The prosecutor asked Burke on cross-examination whether he had "ever misled law enforcement officials with regards to law enforcement investigations?" Burke conceded that he had; he once told an official of the State's Attorney's Office of Cook County that if called before a grand jury he would lie to protect a client. The district judge was entitled to allow this question under *Michelson* and Rule 404(a)(1); cf. *United States v. Green*, 735 F.2d 1018, 1026 (7th Cir.1984). Still, the contrast between the admission of this evidence and the exclusion of direct evidence of prior assistance to law enforcement officials could not have worked to Burke's advantage.

■ We cannot tell why the district judge excluded the evidence; the discussion took place off the record. Maybe it was because Burke argued only that it is admissible under Rule 406 as evidence of habit; this is the argument Burke presses on appeal. But evidence of occasional cooperation is not a habit within the meaning of the Rule. Maybe the district judge thought it was cumulative evidence under Rule 403. We cannot readily tell. Although it might have been better to let Burke introduce at least some episodes of cooperation with the FBI, the district court possesses very broad discretion concerning

---

5. We need not decide whether to join the circuits that have forbidden use of the instruction in all cases. Burke testified in his own defense. The circuits that have not forbidden use of a "standing alone" instruction have suggested that it is appropriate in "special circumstances." Usually they do not identify what these circumstances may be. One candidate, suggested in *United States v. McMurray*, 656 F.2d 540, 551 (10th Cir.1980) (dictum), reheard en banc on other grounds, 680 F.2d 695 (1981), is the case in which character evidence does "stand alone" —when it is the only evidence the defendant offers. Even then the instruction invites the jury to assess the character evidence without reference to the prosecution's evidence. The "standing alone" instruction also could have an unintended and pernicious effect: it could suggest to the jury that the defendant bears some burden of establishing his innocence, and that it needs to evaluate the character evidence to see whether the defense has established a reasonable doubt. On the other hand, when the defendant offers character evidence as his entire case, he may elect to take this risk. We postpone further consideration of the problem to a case in which it is presented.

evidentiary matters, and the admission of prior act evidence is no · exception. E.g., *West v. Love*, 776 F.2d 170, 173–174 (7th Cir.1985); *United States v. Serlin*, 707 F.2d 953, 959 (7th Cir.1983). Evidence of prior cooperation with the FBI was tangentially relevant, no more. Burke's defense was that he wanted to stab his clients in the back for the sake of publicity, that he was merely feigning extortion in order to elicit damning information. He did not offer to show that he had done this in the past or that any of his tips to law enforcement officials came from being false to his clients. To the contrary, the only evidence on the relation among clients, Burke, and the law suggested that Burke would violate the law to protect his clients. Although the giving of information to the police may have been close enough to the issue to be relevant, it was not exactly powerful.

 Evidence that the defendant frequently performs lawful or laudable acts does not often establish that some subsequent act is also lawful or laudable. E.g., *United States v. Winograd*, 656 F.2d 279, 284 (7th Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982); *United States v. General Motors Corp.*, 121 F.2d 376, 405 (7th Cir.), *cert. denied*, 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497 (1941). On the other hand, the prior act may be relevant even though it is not a duplicate of the one at issue in the trial. For example, prior acts of dubious moral quality may be relevant because they show a willingness to operate outside of "ordinary" channels. See *United States v. McPartlin*, 595 F.2d 1321, 1343–44 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979), in which we sustained a judge's decision, in a bribery case, to admit evidence that the defendant earlier paid bribes in Brazil even though, defendant claimed, bribes in Brazil were not deemed illegal or immoral. Whether the prior action is laudable or unlawful should not make much difference; the question in each case is whether prior conduct makes more or less likely the existence of some fact that matters. See Fed.R.Evid. 401 (defining relevant evidence). It is therefore difficult to frame general statements. The pertinence of prior conduct is a question of more or less, not of yes or no. *United States v. Radseck*, 718 F.2d 233, 236 (7th Cir.1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1291, 79 L.Ed.2d 693 (1984); *United States v. O'Brien*, 618 F.2d 1234, 1238 (7th Cir.), *cert. denied*, 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1980). All the more reason why we defer to the reasoned exercise of a district judge's discretion. Cf. *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 830–32 (7th Cir.1985); *Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 937–40 (7th Cir.1984) (concurring opinion).

 Evidence of Burke's prior tips to the FBI really would have been an extension of his character evidence. Yet it is well understood that character evidence is required to be hearsay; the witness must testify to reputation rather than to the specific acts that established the reputation. Fed.R.Evid. 608, 404(b). The reputation evidence that Burke introduced provided the jury with substantially the information he wanted to convey through direct evidence. The jury learned that Burke was held in esteem by many in the law enforcement community. The jury knew that Burke had been an officer of the Chicago police until 1976. All of this suggested that Burke had cooperated with law enforcement in the past, and it made his defense, if not plausible, at least not fantastic. This was leeway enough to support a decision, as this may have been, to exclude further tangentially relevant evidence as cumulative or confusing under Rule 403. We will sustain a decision excluding evidence if any ground would have been sufficient support. See *Hutter Northern Trust v. Door County Chamber of Commerce*, 467 F.2d 1075, 1079–80 (7th Cir.1972); cf. *United States v. Harris*, 761 F.2d 394, 400 (7th Cir.1985). The district judge was within her discretion in excluding this evidence.

## IV

The remaining issues require less discussion.

**1.** Burke maintains that the evidence is insufficient to support the conviction. It is difficult to imagine a stronger case of extortion, however, once we take the evidence and inferences in the light most favorable to the prosecution (as we now must). Clark and Noonan both testified that Burke demanded money in order to avoid criminal prosecution; both said that Burke announced that they had already been indicted under a statute that would permit the government to take "everything" they owned, and that he promised effective relief for a substantial payment. Burke told Clark that he had been indicted; Clark relayed to Noonan Burke's statement that Noonan had been named in a 71-count indictment. Two conversations between Burke and Noonan were recorded. In the first Burke extolled his ability to provide protection from the indictment that, he insisted, had already been returned by the grand jury. In the second Burke bragged about having talked the FBI agent out of a demand to receive $120,000 and promised that if Noonan would produce $72,000 in cash his problems would be over. Extortion is the wrongful use of economic fear to obtain money. *United States v. Lisinski*, 728 F.2d 887, 890–91 (7th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984). This is as clear a case as they come.

**2.** On cross-examination the prosecutor questioned Burke about a call Burke placed to his accountant on April 11, 1984. The conversation lasted eight minutes. Then the prosecutor established that Burke's income tax for 1983, paid in mid-June 1984, was $6,386.59. The prosecutor did not introduce any evidence about the subject of the conversation between Burke and the accountant, but he evidently sought to imply that Burke tried to extort money from Clark and Noonan in order to meet an unanticipated tax liability. (Burke's initial conversation with Clark also took place on April 11; his final conversation with Noonan occurred on April 19.) In closing argument the prosecutor stated that Burke needed money in April 1984 and thought he saw a "mark" in his neighbor Clark. The judge permitted the questioning and argument, although she also told the jury that the evidence was not admitted for the purpose of showing any problem with the tax return (that is, it was not "other crime" evidence).

This questioning created needless problems. There was no reason to think that Burke had failed to anticipate his tax liability or make adequate preparations for payment; the prosecutor never showed this and did not even bring out the subject of the conversation with the accountant. All people "need money" in the abstract, and the fact that taxes (like a college education for one's children) require cash does not suggest that Burke had any unusual motive to commit extortion. The evidence was incomplete, and even if the gaps had been filled in the inference would not have been strong. Still, Burke was free to tell the jury what he discussed with the accountant on April 11; if the topic was not taxes (though what else do people discuss with accountants on April 11?) Burke could have said so. He was at liberty to show that he had made provision for his obligations and did not need extra cash in April. All of this is the usual stuff of trial. There was nothing damning about the question itself; the prosecutor did not use a back-door method of introducing other-crime evidence or otherwise poisoning the jury. This case is a far cry from *United States v. Brown*, 519 F.2d 1368 (6th Cir. 1975), on which Burke relies. We therefore need not decide whether the district judge should have sustained Burke's objection to this line of questioning. If this was error, it was harmless.

**3.** One bit of other-crime evidence did get before the jury. The prosecutor brought out Noonan's fear of being indicted and of Burke's claimed ability to influence the indictment. When the prosecutor asked Noonan how he came to stop fearing Burke, Noonan proclaimed: "I knew he was lying. I went to the FBI and the FBI said that, 'This guy has done this before ... [and] he's doing it again'." The judge immediately ordered the jury to disregard

Noonan's statement and also told the jurors that even if the FBI had said something to Noonan they could not consider the truth of that statement. The judge and counsel for both sides then conferred about how to reduce the effects of the statement. The prosecutor stipulated that the FBI had no additional information about Burke that was pertinent to the case, and counsel for Burke read this stipulation to the jury during closing argument.

 The accidental introduction of other-crime evidence into a case is always troubling, but here the judge's reaction was swift and sure. The cautionary statement, coupled with the stipulation, reduced the significance of Noonan's regrettable testimony. We do not think that the jury could disregard such testimony; it was too vivid to be forgotten. But what cannot be forgotten may be diluted, and cautionary instructions may be sufficient to this end. E.g., *Parker v. Randolph*, 442 U.S. 62, 69–74, 99 S.Ct. 2132, 2137–40, 60 L.Ed.2d 713 (1979) (plurality opinion) (collecting cases). Given the strength of the case, the unavoidable residuum of effect did not require another trial.

 4. Count 1 of the indictment charged Burke with extorting the $5,000 check from Clark. The judge charged the jury that the prosecutor had to prove, among other things, that Burke obtained the money from Clark "under fear of economic harm." The charge did not also say that Clark's fear had to be "reasonable" under the circumstances. Some courts have said that the reasonableness of the victim's fear is an element of the offense of extortion. See *United States v. Brown*, 540 F.2d 364, 373 n. 6 (8th Cir.1976) (dictum); *United States v. Furey*, 491 F.Supp. 1048 (E.D.Pa.), *aff'd*, 636 F.2d 1211 (3d Cir.1980). We need not decide whether the reasonableness of the victim's fear is a part of the offense because Burke did not object to the instruction the court gave. To the contrary, at the end of the instruction conference counsel for Burke represented that "we are in agreement with respect to the instructions with one single exception, and

that is ... with respect to character and reputation of the defendant." Burke may not now press a point he abandoned at trial. *United States v. Markowski*, 772 F.2d 358, 362–63 (7th Cir.1985); *United States v. Magnus*, 743 F.2d 517, 525 (7th Cir.1984).

 5. Burke testified before the grand jury at his own request. The prosecutor did not administer *Miranda* warnings or tell Burke that he was a target of the investigation. Burke argues that, as a result, the indictment must be dismissed. Now it is questionable whether an indictment ever should be dismissed for "prosecutorial misconduct" after the defendant has been tried and convicted. See *United States v. Murphy*, 768 F.2d 1518, 1533–34 & n. 2 (7th Cir.1985); *United States v. Roth*, 777 F.2d 1200, 1202–05 (7th Cir. 1985). The grand jury is designed to protect the innocent and those who are probable recipients of mercy by the petit jury. The real victims of prosecutorial abuse of the grand jury process are those for whom the trial is the punishment, a subset of those indicted and acquitted. We know from the outcome of this case that Burke was neither innocent nor a likely recipient of mercy. But we need not pursue the point. There was no misconduct. No witness is entitled to "target warnings." *United States v. Washington*, 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977). And although *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976), did not conclusively determine when witnesses should be given *Miranda* warnings, warnings have nothing to do with the validity of indictments. Statements taken in violation of *Miranda* may be suppressed; the absence of warnings does not taint the indictment. None of Burke's testimony before the grand jury was introduced at trial, so he has no claim under *Miranda*.

### V

This concludes our discussion of the merits. A procedural question remains. The appendix filed by the United States con-

tains three items: transcripts of the two taped conversations between Burke and Noonan, and a transcript of Burke's testimony before the grand jury. Burke has filed a motion to strike the appendix. Burke represents that none of these items is in the record. Unless each item is in the record, it must be stricken; only materials from the record may appear in appendices. Fed.R.App.P. 10(a), 30.

The transcripts of the tapes were not admitted into evidence. The tapes were admitted and played to the jury; the transcripts were marked as exhibits and distributed to the jury so that it could read as it listened, but the transcripts were not themselves evidence. Burke insists that we therefore cannot have the transcripts before us. This is incorrect. Rule 10(a) states that the record on appeal includes "[t]he original papers and exhibits filed in the district court...." Both transcripts are exhibits; they are also "original papers ... filed in the district court."

The rules do not limit the record to items admitted in evidence; if they did, it would be impossible for a party to show to an appellate court material it offered as evidence and that it contends was incorrectly excluded. The purpose of Rules 10(a) and 30 is to limit the record to what was before the district court, material of which each party had notice and to which each could respond. It would be counterproductive to limit the appendix to materials actually admitted as evidence. Far better for appellate judges to read transcripts of the tapes than to requisition the tapes for individual listening. (Burke was free to contend that the transcripts are inaccurate, but he did not.)

The transcript of Burke's testimony was not before the petit jury, but it, too, was an "original paper[ ] ... filed in the district court." The district judge reviewed the entire transcript before ruling on Burke's motion to dismiss the indictment. Appellate judges are entitled to see all the materials that the district judge considered. (Because the district judge reviewed the

transcript, we need not consider the status on appeal of grand jury materials that were not placed before the district judge.)

The motion to strike the government's appendix suggests, however, that counsel for Burke practice a double standard. Burke argued, as we have recounted, that the evidence was insufficient and events at trial prejudiced the defense. The brief contains the following statement: "The government witness' [sic] credibility was severely shaken at trial when their various motives to incriminate Defendant Burke were revealed. The prejudice can be measured in one of the jurors [sic] comments to one of the Defendant's character witnesses in a happenstance meeting after the trial was concluded. The juror indicated a great deal of doubt about the outcome of the case at the time of the verdict and a great deal of doubt at the time of the chance meeting."

This is most assuredly not part of the record in this case. Perhaps it could not even have been made a part; collateral attacks on verdicts are not generally allowed. Fed.R.Evid. 606(b); *Watts v. Laurent*, 774 F.2d 168, 181 n. 5 (7th Cir.1985). But counsel did not try. Neither the unnamed character witness nor the unnamed juror filed an affidavit describing this event. We have only the lawyers' testimony, and their testimony appears only in the brief. This is so obvious a violation of the principle that counsel may not refer to case-specific matter outside the record that it cannot have been an oversight. We trust that it will not happen again. The lawyers' chagrin at seeing their names in the published report of this case should be sufficient to ensure further compliance.

The motion to strike the government's appendix is denied. The judgment is affirmed.