**UNITED STATES of America, Appellee,**

v.

**Juan José PUJANA–MENA,
Defendant–Appellant.**

**No. 669, Docket 90–1464.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 13, 1991.

Decided Oct. 25, 1991.

Roanne L. Mann, New York City (Stein, Zauderer, Ellenhorn, Frischer & Sharp, New York, N.Y., of counsel), for defendant-appellant.

Linda B. Lakhdhir, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Susan Corkery, Asst. U.S. Atty., Brooklyn, N.Y.), for appellee.

Before PIERCE, WINTER, and WALKER, Circuit Judges.

PIERCE, Senior Circuit Judge:

Juan José Pujana–Mena appeals from a judgment of the United States District Court for the Eastern District of New York, Korman, *Judge*, convicting him after a jury trial of conspiracy and substantive narcotics offenses. Pujana–Mena seeks reversal of his conviction contending that the district court erred in refusing to instruct the jury that character evidence alone may be sufficient to create a reasonable doubt. He also claims that the court erred in permitting a government agent to vouch for the credibility of a government informant. After considering each of these arguments, we affirm the judgment of conviction.

## BACKGROUND

Pujana–Mena, a resident of Bogotá, Colombia, was arrested in New York City on September 12, 1989, following an investigation by the Drug Enforcement Administration ("DEA") into large-scale narcotics smuggling. A seven-count superseding indictment was filed on December 15, 1989, charging Pujana–Mena with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a); conspiring to import more than 1000 kilograms of marijuana into the United States in violation of 21 U.S.C. §§ 963 and 960(b)(1)(G); importing more than 1000 kilograms of marijuana in violation of 21 U.S.C. § 952(a); possession of more than 1000 kilograms of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and engaging in a monetary transaction involving more than $10,000 in drug proceeds in violation of 18 U.S.C. § 1957.[1]

The evidence at trial established that in 1988 and 1989 several large loads of marijuana and cocaine were smuggled by ship into the United States, concealed within containers of seemingly legitimate exports from Ecuador, Guatemala, and Colombia. The drugs were seized at ports in Louisiana, New Jersey, and New York, after being discovered during customs inspections. Pujana–Mena did not dispute that these quantities of drugs entered the country, but he claimed that he was not responsible for the illegal shipments.

The government sought to prove that Pujana–Mena had arranged the shipments as the leader of an extensive narcotics-importation network, principally through the testimony of two witnesses, Hernando Aponte, a paid confidential DEA informant, and Carlos Sanin–Delgadillo, a former narcotics trafficker who agreed to cooperate with the government after his arrest in April 1988. Aponte and Sanin–Delgadillo gave detailed testimony linking Pujana–Mena with four drug shipments from August 1988 to September 1989. The government also presented physical evidence, including tape-recorded conversations between Pujana–Mena and Aponte and printouts of specially-encrypted computer messages that the government asserts were sent by Pujana–Mena to Aponte.

The defense presented three character witnesses from Pujana–Mena's home in Bogotá, Colombia, who testified as to his reputation in his community as an honest and law-abiding person. In addition, the defense introduced several documentary exhibits. These included two reports prepared by DEA agents during the investigation, one of which set forth statements made by Sanin–Delgadillo made immediately after his arrest, at which time he denied any knowledge of the drugs that had been seized. Pujana–Mena also introduced a customs declaration form dated February 25, 1988, in which he declared that he was bringing $40,000 into the United States—an act purportedly contrary to the usual practice of drug dealers of smuggling cash out of the country. Also, Pujana–Mena introduced a certificate of incorporation for a Colombian company called Delta Chemi-

---

1. Pujana–Mena was initially charged in a six-count indictment filed on September 22, 1989. The superseding indictment added the continuing criminal enterprise charge.

cals, of which Pujana–Mena was a partner, apparently offered to show that he was engaged in legitimate business activities.

The jury convicted Pujana–Mena on the conspiracy and substantive drug counts and acquitted him on the continuing criminal enterprise and money-laundering charges. The district judge sentenced Pujana–Mena to concurrent prison terms of 200 months on each count, to be followed by five years of supervised release. The court also imposed a fine of $242,260 to cover the costs of his incarceration, and a special assessment of $50 on each count.

This appeal followed.

## DISCUSSION

### I. *"Standing Alone" Character Evidence Instruction*

■ During a pre-charge conference that took place on the morning summations were to begin, the following colloquy occurred when defense counsel asked the district court to supplement its proposed charge on character evidence and instruct the jury "that character evidence alone may raise a reasonable doubt":

THE COURT: I'm not charging that. I think it's wrong.

[DEFENSE COUNSEL]: Exception to that.

Explaining his refusal to give the requested charge, the district judge further stated:

I could be wrong, I think there is a good argument that you shouldn't even allow character evidence and yesterday afternoon's performance was Exhibit A[. T]o say that could create a reasonable doubt because there is some language in an old Supreme Court opinion that wasn't talking about a charge is really more than I can swallow and isn't an indication from a higher authority that it's required.

The character evidence charge ultimately given to the jury was:

You have heard testimony that the defendant has a good reputation for honesty in the community where he lives and works and for truthfulness. Along with all the other evidence you have heard, you may take into consideration what you believe about the defendant's honesty and truthfulness when you decide whether the government has proven, beyond a reasonable doubt, that the defendant committed the crime.

Pujana–Mena claims that Judge Korman's refusal to instruct the jury that evidence of good character alone may be sufficient to create a reasonable doubt was reversible error. For the reasons that follow, we disagree.

■ We review jury instructions *de novo.* "In order to succeed when challenging jury instructions appellant has the burden of showing that the requested charge 'accurately represented the law in every respect and that, viewing as a whole the charge actually given, he was prejudiced.'" *United States v. Dove,* 916 F.2d 41, 45 (2d Cir.1990) (quoting *United States v. Ouimette,* 798 F.2d 47, 49 (2d Cir.1986), *cert. denied,* 488 U.S. 863, 109 S.Ct. 163, 102 L.Ed.2d 134 (1988)).

The issue of whether, and under what circumstances, a defendant is entitled to a "standing alone" character evidence instruction has long divided the federal appellate courts. *See Spangler v. United States,* 487 U.S. 1224, 1224, 108 S.Ct. 2884, 2884, 101 L.Ed.2d 918 (1988) (White, J., dissenting from denial of certiorari). Over the years, it has also generated seemingly contradictory rulings from this court. *Compare United States v. Fayette,* 388 F.2d 728, 737 (2d Cir.1968) ("instruction should not be given, at least without the qualification that the so-called character evidence should be considered along with all the other evidence in the case") *and United States v. Lowenthal,* 224 F.2d 248, 249 (2d Cir.1955) (per curiam) ("standing alone" charge too broad; character evidence should be considered "in conjunction with all the evidence received at the trial, not 'in and of itself'") *with United States v. Cramer,* 447 F.2d 210, 219 (2d Cir.1971) (citations omitted) (defendant entitled to charge, but failure to give deemed harmless error), *cert. denied,* 404 U.S. 1024, 92 S.Ct. 680, 30 L.Ed.2d 674 (1972); *and Unit-*

ed States v. Minieri, 303 F.2d 550, 555 (2d Cir.) (same), cert. denied, 371 U.S. 847, 83 S.Ct. 79, 9 L.Ed.2d 81 (1962). Today we clarify this circuit's position with respect to the controversial instruction and join the majority of circuits that have held that such a charge is not required.[2]

The confusion over the "standing alone" character evidence charge stems from statements made by the Supreme Court in *Edgington v. United States*, 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467 (1896) and *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). In *Edgington*, the issue was whether the trial court erred in charging the jury that proof of the defendant's good character " 'must not change your verdict,' " and that such evidence has " 'special force wherever the commission of the crime is doubtful.' " 164 U.S. at 364, 17 S.Ct. at 73. The Supreme Court reversed, stating:

> It is impossible, we think, to read the charge without perceiving that the leading thought in the mind of the learned judge was that evidence of good character could only be considered if the rest of the evidence created a doubt of defendant's guilt. . . .
>
> Whatever may have been said in some of the earlier cases, to the effect that evidence of the good character of the defendant is not to be considered unless the other evidence leaves the mind in doubt, the decided weight of the authority now is that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt. The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing.

164 U.S. at 365–66, 17 S.Ct. at 73–74.

Contrary to appellant, we do not read this passage as mandating a "standing alone" character evidence charge. The charge at issue in *Edgington* was found erroneous in that it suggested to the jury that it should not consider defendant's character evidence unless the rest of the evidence left some doubt about defendant's guilt. The quoted passage merely emphasizes the point that character evidence may not be given subordinate status, but is to be considered along with the other evidence in the case. *Edgington* was thus "striking down a limitation on the use of character evidence, not requiring 'that the lack of limitation must be expressly pointed out to the jury.' " *United States v. Winter*, 663 F.2d 1120, 1147 n. 46 (1st Cir.1981) (quoting *Carbo v. United States*, 314 F.2d 718, 746 (9th Cir.1963), *cert. denied*, 377 U.S. 953, 84 S.Ct. 1625, 1626, 12 L.Ed.2d 498 (1964)); *see also United States v. Foley*, 598 F.2d 1323, 1336 (4th Cir.1979) ("[*Edgington* ] did not hold that character evidence is so highly probative that it must always be singled out as potentially exculpatory standing

**2.** Seven circuits have held that a defendant is not entitled to a "standing alone" charge. *See, e.g., United States v. Spangler*, 838 F.2d 85, 87 (3d Cir.), *cert. denied*, 487 U.S. 1224, 108 S.Ct. 2884, 101 L.Ed.2d 918 (1988); *United States v. Borders*, 693 F.2d 1318, 1328–30 (11th Cir.1982), *cert. denied*, 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983); *United States v. Ruppel*, 666 F.2d 261, 273 (5th Cir. Unit A), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982); *United States v. Winter*, 663 F.2d 1120, 1146–48 (1st Cir.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1249, 1250, 75 L.Ed.2d 479 (1983); *Carbo v. United States*, 314 F.2d 718, 746 (9th Cir.1963), *cert. denied*, 377 U.S. 953, 84 S.Ct. 1625, 1626, 12 L.Ed.2d 498 (1964); *Black v. United States*, 309 F.2d 331, 344 (8th Cir.1962), *cert. denied*, 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed.2d 765 (1963); *Poliafico v. United States*, 237 F.2d 97, 114 (6th Cir.1956), *cert. denied*, 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957).

In addition, the Seventh Circuit has held that the "standing alone" instruction is improper in a case where the defendant testifies, but has left open the question whether the charge should be forbidden in all cases. *See United States v. Burke*, 781 F.2d 1234, 1242 & n. 5 (7th Cir.1985). The Fourth and Tenth Circuits similarly have held that the "standing alone" charge need not always be given, but may be necessary when defendant relies solely on evidence of good character. *See United States v. Foley*, 598 F.2d 1323, 1336–37 (4th Cir.1979), *cert. denied*, 444 U.S. 1043, 100 S.Ct. 727, 728, 62 L.Ed.2d 728 (1980); *Oertle v. United States*, 370 F.2d 719, 726–27 (10th Cir.1966), *cert. denied*, 387 U.S. 943, 87 S.Ct. 2075, 18 L.Ed.2d 1329 (1967).

The District of Columbia Circuit is the only circuit still requiring a "standing alone" instruction in all cases in which a defendant offers character evidence. *See United States v. Lewis*, 482 F.2d 632, 637 (D.C.Cir.1973).

'alone.' "), *cert. denied,* 444 U.S. 1043, 100 S.Ct. 727, 728, 62 L.Ed.2d 728 (1980). Of course, like all other evidence, character evidence may be "deemed sufficient to engender a reasonable doubt.... But such evidence must be considered in conjunction with all the evidence received at the trial, not 'in and of itself.' " *Lowenthal,* 224 F.2d at 249.

We also find no support for a required "standing alone" charge in *Michelson v. United States, supra,* the other Supreme Court case that has proven troublesome for courts considering this issue. *Michelson,* unlike *Edgington,* did not involve a jury charge, but addressed the scope of the prosecution's cross-examination of defendant's character witnesses. The Court held that it was proper for the prosecutor—who was strictly foreclosed from introducing evidence of defendant's bad character in its case-in-chief—to ask the witnesses on cross about their knowledge of specific instances of defendant's prior bad conduct, since such knowledge, "if admitted, would tend to weaken the assertion that [defendant] was known as an honest and law-abiding citizen." *Michelson,* 335 U.S. at 484, 69 S.Ct. at 222.[3] In reaching this conclusion, the Court briefly reviewed the current law on character evidence and, interpreting *Edgington*'s holding, stated:

> This privilege [to introduce good character testimony] is sometimes valuable to a defendant for this Court has held that such testimony alone, in some circumstances, may be enough to raise a reasonable doubt of guilt and that in the federal courts a jury in a proper case should be so instructed.

335 U.S. at 476, 69 S.Ct. at 219 (citing *Edgington* ).

We are inclined to agree with the Seventh Circuit's observation in *United States v. Burke,* 781 F.2d 1234 (7th Cir.1985), that "this passage in *Michelson* does not correctly state the holding of *Edgington.*" *Id.* at 1241; *see also Winter,* 663 F.2d at

1147. As noted above, *Edgington* held only that jury instructions must not give character evidence an inferior status; we do not read it to hold that a defendant is entitled to an instruction singling out character evidence for special treatment by the jury. True, *Michelson* states that character evidence may "alone" generate a reasonable doubt and that "in some circumstances" a jury should be so charged. But, as the Seventh Circuit noted in *Burke:*

> Nothing in this passage says that character evidence should be singled out for special attention by juries. It simply states that 'in some circumstances'—presumably those where the case is close—character evidence alone may push things over the line of reasonable doubt. Unquestionably true, but it does not imply any particular instruction.

*Burke,* 781 F.2d at 1241. We, too, reject the view that *Michelson* requires that an instruction *must* be given that informs the jury to consider character evidence "standing alone."

Our reading of *Edgington* and *Michelson* accords with general principles governing the admissibility of character evidence. Evidence that a defendant is regarded as an honest and law-abiding citizen by members of his community is not so probative of the question of whether defendant is guilty or not guilty that the jury should be invited to consider it apart from, and possibly to the exclusion of, the other evidence in the case. Indeed, character evidence often possesses limited probative value in determining whether the defendant committed the specific crime charged. Federal Rule of Evidence 404(a) provides, with specific enumerated exceptions, that character evidence is generally inadmissible. Although one of the exceptions to this rule allows a criminal defendant to introduce evidence of good character (and the prosecutor the right to rebut it), Fed.R.Evid. 404(a)(1), "this dispensation is not based on

---

**3.** *Michelson's* holding was codified in Fed. R.Evid. 405(a), which provides:

In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputa-

tion or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

a strong belief that the evidence is probative." *Burke,* 781 F.2d at 1239. The justification appears to be based on notions of fairness rather than logic; the defendant who, with the considerable forces of the government arrayed against him and who may have little more than his good name to defend himself, should not be precluded from presenting even such minimally probative evidence. *See, e.g.,* Fed.R.Evid. 404 advisory committee note ("its basis lies more in history and experience than in logic").

A recognition of the proper role of the jury also supports our conclusion that neither *Edgington* nor *Michelson* compels an instruction telling the jury that character evidence "standing alone" may create a reasonable doubt. Such an instruction threatens to interfere with one of the quintessential functions of the jury—to determine the relative weight, if any, to be given to particular evidence. While a jury may find character evidence to be of sufficient weight, by itself, to generate a reasonable doubt, instructing them to focus on such evidence in isolation or suggesting that they give it determinative weight usurps this fundamental jury responsibility. *See Winter,* 663 F.2d at 1148. It is also misleading in that it may "readily be understood by the jury as permission (even as command) to acquit a defendant of good general character, even if the jurors are convinced that the defendant committed the acts with which he was charged." *Burke,* 781 F.2d at 1239. Finally, it mistakenly conveys to the jury the message that character evidence "has some special ability to create a reasonable doubt; [which] it does not." *Id.* at 1240.

Appellant does not view the "standing alone" instruction as overly intrusive on the province of the jury. In fact, Pujana–Mena contends that a "standing alone" instruction is necessary because character evidence is "precisely the kind of proof as to which jurors require special guidance" and that "jurors should not [be] left to speculate as to the weight that they might attach to appellant's character proof." While this appears to be a valid point, we do not believe that a "standing alone" instruction alleviates this concern. We are mindful of Judge Learned Hand's observation, made nearly sixty years ago, that "evidence of good character is to be used like any other, once it gets before the jury, and the less they are told about ... what they shall do with it, the more likely they are to use it sensibly." *Nash v. United States,* 54 F.2d 1006, 1007 (2d Cir.), *cert. denied,* 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945 (1932). But, even assuming the correctness of appellant's assertion that jurors will not know what to do with good character evidence without some particular instruction, we fail to see how a charge telling them to look at character evidence "alone" remedies this situation.

■ Since character evidence is not directly connected to the fundamental question as to whether the defendant is guilty or not guilty of the charged crime, it might be helpful in some cases to instruct the jury as to the purpose or purposes for which it is admitted. *Burke,* 781 F.2d at 1239. Character evidence is admissible principally to show that, because of his or her good reputation, the defendant is less likely to have committed the charged crime. In cases where the defendant testifies, character evidence may also be used by the jury to help it determine whether the defendant was truthful on the stand. *Id.* at 1240. The district court can, if it chooses, instruct the jury along these lines and thus provide whatever special guidance the jury may need regarding character evidence. In this way, the jury is told how to use character evidence and what part it may play in their deliberations without usurping the jury's function by telling them to give such evidence separate special focus or weight.

Some courts that have rejected the "standing alone" charge have left open the question of whether it should be required in cases where the defendant relies solely on character evidence in his defense. *See Burke,* 781 F.2d at 1242 n. 5; *Foley,* 598 F.2d at 1337; *Oertle v. United States,* 370 F.2d 719, 727 (10th Cir.1966), *cert. denied,* 387 U.S. 943, 87 S.Ct. 2075, 18 L.Ed.2d 1329 (1967). Herein, Pujana–Mena claims he re-

lied "almost exclusively" on the testimony of his three character witnesses. The government counters that Pujana–Mena's primary defense was not based on good character evidence but on a theory that he was framed by the confidential informant and one of his employees. There is some basis for the government's claim, and Pujana–Mena's attorney did argue at length in summation that his client may have been the target of an elaborate scheme. However, even if we accept Pujana–Mena's claim that he relied "almost exclusively" on character evidence, we remain unpersuaded that, in this situation, a defendant is entitled to a "standing alone" charge.

One of the primary problems with the "standing alone" charge is that it risks having the jury disregard *all* the other evidence in the case, not just other defense evidence. Thus, giving a "standing alone" charge in a case where a defendant relies solely on character evidence for his defense presents the same problem by suggesting to the jury that they consider the character evidence without reference to the prosecution's evidence. A more subtle harmful effect of the "standing alone" instruction in this context is the possible suggestion to the jury that the defendant bears some burden of establishing his innocence. *Burke*, 781 F.2d at 1242 n. 5. Because these potential harmful effects can be avoided by a charge that is "sufficiently explanatory of the effect reputation testimony has on the prosecution's burden of proof," *Minieri*, 303 F.2d at 555, we do not believe a "standing alone" instruction is required where a defendant relies exclusively on character evidence.

Accordingly, we hold that whether or not a defendant rests his case solely on character evidence, an instruction to the jury that such evidence "standing alone" may create a reasonable doubt is not required.[4] It is sufficient for the trial judge to instruct the jury to consider character evidence along with all the other evidence in determining whether the prosecution has proven guilt

beyond a reasonable doubt. In addition, if the district judge finds it appropriate, he may inform the jury of the purpose or purposes for which defendant's character evidence is admitted. Judge Korman's charge in this case satisfies this standard.

Acknowledging the broad discretion accorded district judges in framing a jury charge, we need not hold that it would be an abuse of discretion for a district court to give the "standing alone" charge where it is accompanied by "the qualification that the so-called character evidence should be considered along with all the other evidence in the case." *Fayette*, 388 F.2d at 737. However, since several frequently used pattern jury instruction books contain sample charges that include both "standing alone" language and language indicating that the character evidence be considered along with all the other evidence in the case, *see, e.g.,* 1 L. Sand, J. Siffert, W. Loughlin & S. Reiss, *Modern Federal Jury Instructions (Criminal),* at 5–33 (1991) (Instruction 5–15), we find it appropriate to state that we believe such a hybrid charge would be less than ideal in most cases.

First, even where it is accompanied by a charge instructing the jury to consider *all* the evidence in the case, a "standing alone" charge still unnecessarily flags character evidence and suggests to the jury that they give it heightened significance without regard to the other evidence. Moreover, not only does such a hybrid charge not cure the problems of the "standing alone" charge, it may add to them. A charge telling the jury to consider character evidence both *alone* and *together with all the other evidence* is inherently confusing and contradictory. *See Petersen v. United States,* 268 F.2d 87, 90 (10th Cir.1959) (Murrah, J., concurring). Since it appears that the "standing alone" language was incorporated into pattern instructions based on earlier readings of *Edgington* and *Michelson*, we see no reason to encourage district courts

---

**4.** Our holding today is consistent with *Fayette* and *Lowenthal,* but at odds with our decisions in *Minieri* and *Cramer.* We have therefore circulated this opinion before filing to all of the judges of this court. *Germain v. Connecticut Nat'l Bank,* 926 F.2d 191, 194 (2d Cir.1991), cert. granted on other grounds, —— U.S. ——, 112 S.Ct. 294, 116 L.Ed.2d 239 (1991).

**32**

to use this potentially misleading and confusing charge routinely.

## II. *Alleged Vouching by Government Agent*

Pujana–Mena also claims that the district court erred in permitting DEA agent James Kerrigan to vouch for the credibility of Aponte, the government's key informant.

On cross-examination of Agent Kerrigan, defense counsel questioned him extensively as to his efforts to corroborate information supplied to the DEA by Aponte. For example, defense counsel asked Agent Kerrigan whether he tried to obtain phone records to verify that Aponte actually called Pujana–Mena on certain dates. Defense counsel also asked Kerrigan whether he tried to corroborate the fact that Aponte called Bogotá on the days on which computer messages were received, purportedly from Pujana–Mena. After receiving negative responses to these questions, defense counsel emphasized a perceived absence of sufficient corroboration with statements such as "[You j]ust accepted Aponte's word for everything he told you that Mr. Pujana told him, is that right?" and "So we have to accept his word that he had that conversation with Mr. Pujana, isn't that right?" Several times, Kerrigan responded to these statements by explaining why he did not do more to corroborate the informant: "No, I wasn't corroborating the informant. The informant is a reliable informant.... If I thought that Hernando wasn't telling the truth, I wouldn't use him. Neither would any other agents." Defense counsel did not object to any of these responses elicited from Kerrigan on cross-examination.

On redirect, the prosecutor conducted the following examination of Agent Kerrigan:

Q: There was a great deal of discussion on cross-examination about corroborating informants. Do you ever check up on an informant?

A: Yes, I do.

Q: Who determines how much you need to do to check up on an informant in the course of a case?

A: The case agent.

Q: On what basis do you personally make that determination?

A: If I feel that the informant is lying to me or not giving me all the information.

Q: And in this particular case what determination did you make concerning whether you should check up on Mr. Aponte?

A: I determined it wasn't necessary.

Q: Why?

A: Because I felt that—I was getting the information and also that he wasn't lying to me.

Q: In your practice as a DEA agent, if you determine that an informant is lying to you what do you do?

[DEFENSE COUNSEL]: Objection.

THE COURT: I'll allow it, go ahead.

A: I haven't had one lie to me yet that I've found out but if they lied to me and I found out—

[DEFENSE COUNSEL]: I object to any further answer.

THE COURT: Is there some sort of DEA policy on this or is this left to the individual judgment of each agent?

THE WITNESS: It's basically left to the judgment of each agent but there is a policy if you want to follow the ultimate policy of DEA as to terminate the agreement between the informant and DEA.

THE COURT: Is that the DEA policy?

THE WITNESS: If that's what the agent feels and you put it—if you put in the report that you want that to happen, that will be the policy. It's called blackball.

As a preliminary argument, the government contends that Pujana–Mena's vouching claim has been waived because defense counsel did not object to any of the testimony elicited by the prosecutor on redirect and arguably only registered an objection to testimony elicited by the court. Since Pujana–Mena did not move to strike or seek a limiting instruction, the government claims that any objection to the testimony elicited by the court was also waived. To be timely, an objection must be " 'made as soon as the ground of it is known, or

reasonably should have been known to the objector.'" *United States v. Check,* 582 F.2d 668, 676 (2d Cir.1978) (quoting 21 C. Wright & K. Graham, Federal Practice and Procedure § 5037, at 188 (1977)); *see also* Fed.R.Evid. 103(a)(1). We do not construe the timely-objection rule so inflexibly as to require that the objection always be made immediately after the question has been asked but before an answer has been given. *See Hutchinson v. Groskin,* 927 F.2d 722, 725 (2d Cir.1991). Nor do we necessarily find on objection affirmatively waived because it might have been interposed a few questions earlier in the midst of a hotly-contested trial, particularly where the grounds for the objection are not immediately apparent. *See Check,* 582 F.2d at 676. Under the circumstances of this case, we conclude that defense counsel's first objection was sufficient to preserve the issue for appellate review.

Turning to the merits, we reject Pujana–Mena's claim of vouching. While it is true that "[t]he credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of other witnesses at the trial," *United States v. Scop,* 846 F.2d 135, 142 (2d Cir.1988) (citation omitted), we do not believe such vouching occurred in this case. In *Scop* we found vouching where an expert witness gave testimony that was based on the witness's positive assessment of the credibility of the trial testimony of another witness. Thus, *Scop* prohibits witnesses from "assess[ing] the trustworthiness or accuracy of *testimony given in the same case* or [from] offer[ing] opinions based on such an assessment." *Scop,* 846 F.2d at 143 (emphasis in original); *see also United States v. Scop,* 856 F.2d 5, 6 (2d Cir.1988) (on petition for rehearing) (stating previous decision reversed convictions "because the government's expert witness was wrongly allowed to give opinions that embodied legal conclusions and were based on that witness's assessment of the credibility of the testimony of other witnesses").

In this case, Agent Kerrigan did not testify as to the credibility of Aponte's in-court testimony, but basically testified as to a general DEA policy regarding an informant's veracity. This testimony was not elicited on direct examination, but on redirect, after defense counsel had repeatedly suggested that Agent Kerrigan had not done enough to corroborate Aponte's information. In light of defense counsel's cross-examination, it was entirely appropriate on redirect examination for the prosecution to elicit testimony from the witness for the limited purpose of showing why Agent Kerrigan did not undertake more steps to verify Aponte's story. *See, e.g., United States v. Sanchez,* 790 F.2d 1561, 1564 (11th Cir.1986) (per curiam).

## CONCLUSION

For the foregoing reasons, the judgment of conviction is affirmed.