**UNITED STATES of America**

v.

**Rosie WEBB.**

**No. 87 CR 1009.**

United States District Court, N.D. Illinois, E.D.

Aug. 3, 1988.

Sharon Jones, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Spencer W. Waller, Freeborn & Peters, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

A jury convicted defendant Rosie Webb on nineteen counts of a fifty-seven count indictment relating to a conspiracy to defraud the United States Department of Housing and Urban Development ("HUD"). The nineteen counts against her included: seventeen counts alleging theft of government property, 18 U.S.C. § 641; one count alleging conspiracy to defraud the United States, 18 U.S.C. § 371; and one count alleging aiding and abetting theft from government programs, 18 U.S.C. § 666 ("§ 666"). Defendant has moved for a new trial and a judgment of acquittal on all counts, and for judgment notwithstanding the verdict on Count II, the § 666 charge. Although most of her arguments lack merit, her attack on the § 666 charge hits the mark. Thus, for the reasons set forth below, this court will reverse the jury's verdict and enter a judgment of acquittal on the § 666 charge.

## FACTS

Pursuant to § 8 of the United States Housing Act of 1937, 42 U.S.C. 1437f (as amended) ("§ 8"), the United States Department of Housing and Urban Development ("HUD") administers programs ("§ 8 programs") providing rental and utility payment assistance to low and moderate income families. Under these § 8 programs, HUD either contracts directly with private or public landlords to pay a portion of the market rent of qualifying tenants, or enters into contributions contracts with public housing agencies which then contract with the landlords.

Prior to 1984, HUD engaged the private accounting firm Hill & Co. ("Hill Taylor") to manage and administer a § 8 program in the Northern District of Illinois. Under this program, HUD contracted directly with eligible landlords, and deposited benefits earmarked for them in a bank account at Drexel National Bank in Chicago (the "§ 8 account"). Hill Taylor had access to this account, and made the payments from it to the landlords. Hill Taylor also made inspections to ensure that the tenants on whose behalf the payments were made remained qualified for § 8 benefits once they were in the program. During the period relevant to this case, Hill Taylor administered § 8 benefits on behalf of HUD in excess of $180,000 per year.

From October, 1984 to March, 1985 a number of Hill Taylor employees and others conspired to and did defraud the United States by falsifying Hill Taylor records and embezzling § 8 funds. As part of the conspiracy, the Hill Taylor employees issued checks to fictitious landlords and stole

checks payable to valid landlords. The checks were drawn on the § 8 account and cashed by members of the conspiracy at currency exchanges throughout the city. They totalled more than $230,000.

At the time of the conspiracy, defendant worked as a teller at the Savoy Currency Exchange in Chicago. According to the government, she participated in the conspiracy by cashing a number of the fraudulent and stolen checks.

The government's key witness against defendant was Trudy Williams, a former Hill Taylor employee and participant in the conspiracy. She testified for two days, and claimed that she had been introduced to defendant by a friend—whom she identified on the second day of her testimony as Robert Person—and that defendant had cashed embezzled checks for her and another co-conspirator in return for at least $100 per check. The jury apparently believed her, and found defendant guilty on all nineteen counts with which she was charged.

## MOTIONS FOR NEW TRIAL AND ACQUITTAL ON ALL COUNTS

Defendant presents three arguments in her motions for a new trial or an acquittal on all counts: that the court should have barred the testimony of Robert Person; that the court erred in denying her request for an instruction that character evidence alone can provide reasonable doubt of a defendant's guilt; and that the jury's verdict was not supported by facts sufficient to establish guilt beyond a reasonable doubt. These arguments are without merit.

■ With respect to the first, defendant maintains that the government's failure, until the second day of trial, to ask Ms. Williams the identity of the friend who introduced her to defendant demonstrates government misconduct requiring exclusion of the friend's subsequent testimony. Defendant contends that because Ms. Williams had not identified the friend in pre-trial statements, in grand jury testimony, or on the first day of trial, and because the government certainly would not have asked for the name during trial without

knowing the answer, the government must have first asked Ms. Williams for the information on the night after her first day of testimony. This was improper, however, because the court had ordered the government not to discuss the case with Ms. Williams during the overnight recess. Further, defendant insists, the delay in asking the friend's name amounted to a Jenck's Act violation, *see* 18 U.S.C. § 3500, inasmuch as it allowed the government to question Mr. Person without having obtained any witness statements or other materials which defendant could use to impeach his testimony.

Yet, the government attorney's sworn statement, uncontradicted by the testifying witnesses, indicates that the government first asked Ms. Williams her friend's identity during the weekend before Ms. Williams testified, and did so only when it learned that defendant intended to assert at trial that she did not know the members of the conspiracy. Thus, the government did not violate the court's order; further, since there is nothing improper in failing to ask for information until it becomes relevant, the Jencks Act theory fails as well.

■ As for defendant's "character instruction" argument, this too must fail. Although the defendant correctly notes that *United States v. Burke*, 781 F.2d 1234 (7th Cir.1986), expressly left open the possibility that such an instruction—"[c]haracter evidence alone may create a reasonable doubt of defendant's guilt"—might be appropriate in "special circumstances," *Id.* at 1242 n. 5, it made quite clear that such an instruction is never required and remains within the discretion of the court. This court decided during trial that the instruction was unnecessary and confusing, and perhaps even unduly prejudicial, and thus refused to give it. The court finds no error now in that decision.

■ Finally, this court finds, as it must to sustain a jury's verdict, that there is substantial evidence to support the jury's finding on each count. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United*

*States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983). The testimony of Ms. Williams permitted the jury to find that each of the checks was embezzled, and that defendant knew this and yet cashed the checks. The fact that Ms. Williams could not identify her signature on each and every check, and that defendant presented evidence contradicting other aspects of Ms. Williams testimony, does not defeat the jury's ability to infer defendant's guilt on each of the counts.

Accordingly, defendant's motions for a new trial or judgment of acquittal on all counts will be denied.

## MOTION FOR JUDGMENT NOTWITH-STANDING THE VERDICT ON THE § 666 COUNT

Defendant next argues that her conviction under § 666 must be vacated and a judgment of acquittal entered. At the time relevant to this case, § 666 provided, in pertinent part:

(a) Whoever,

(1) being an agent of an organization ... [which] receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance or other form of Federal assistance,

(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—

(i) is valued at $5,000 or more, and

(ii) is owned by, or is under the care, custody or control of such organization,

shall commit an offense against the United States.

18 U.S.C. § 666 (Supp.1984).[1] Defendant claims that her conviction under this stat-ute was improper for two reasons: first, because the government cannot aggregate the amount of the checks she cashed—all valued at under $5,000—in seeking to satisfy the $5,000 statutory minimum; and second, because the federal funds paid to Hill Taylor pursuant to Hill Taylor's contract with HUD did not constitute "benefits" within the meaning of § 666.

*Aggregation*

At trial, the government requested an instruction on the § 666 charge which required the jury to find, among other things, "that William Hardy, Ora Pearson, and Trudy Williams embezzled, stole, or otherwise without authority knowingly converted to the use of persons other than the rightful owners, property valued at $5,000 or more[, and] ... that the defendant knowingly aided and abetted William Hardy, Ora Pearson, and Trudy Williams in commission of the offense." Defendant requested the following addition to this charge: "In considering the charge you must consider the value of each item of property individually." Because of the paucity of case law on when the government may "aggregate" the value of property taken at different times in order to satisfy a statutory minimum, this court discussed the issue at length with the parties.

▆▆▆▆ The government conceded that, because no single item of property exceeded $5,000, the defendant's requested instruction, if proper, would require an acquittal. Thus, after considerable discussion left the matter unresolved, the parties agreed that the court could give the government's version alone and then rule on the validity of defendant's version if the jury returned a guilty verdict. That time has come.[2]

---

1. Section 666 was amended in 1986 but, insofar as the statute is applicable here, those amendments were purely technical. *See* 18 U.S.C. § 666 (Supp.1986); H.R.Rep. No. 797, 99th Cong., 2d Sess. 30, *reprinted in* 1986 U.S.Code Cong. & Adm.News 6138, 6153.

2. The government claims that defendant waived its right to bring this motion because he failed to raise it prior to trial. *See* Fed.R.Cr.P. 12(b). Yet, the government presents this argument in a footnote and provides no argument to support it. The applicability of Rule 12(b) is not so clear that the government may merely cite it and move on. In the absence of some explanation as to why defendant's motion falls within the category of those objections which must be made before trial, the government has waived this claim. Furthermore, the government expressly agreed to allow defendant to contest its § 666 jury instruction after trial in return for

■ No court has addressed the question whether the government may aggregate the value of property stolen in multiple conversions of less than $5,000 in order to reach § 666's $5,000 minimum. Relevant caselaw, however, suggests that aggregation under § 666 is proper, provided that the multiple conversions were part of a single scheme or plan the intent of which was to steal more than $5,000. Most significantly, numerous state and federal courts have held that a series of misdemeanor larcenies may be aggregated to reach the dollar amount for a felony larceny only where "there was a continuing impulse, intent, plan or scheme actuating the several takings." *United States v. Billingslea*, 603 F.2d 515, 520 n. 6 (5th Cir. 1979) (theft of multiple checks each valued at less than $100 does not permit conviction for stealing more than $100 under 18 U.S.C. § 665) (*quoting* Guthrie, "Series of takings Over a Period of Time as Involving Single or Separate Larcenies," 53 A.L.R. 398, 401 (1973)); *see also Cartwright v. United States*, 146 F.2d 133, 135 (5th Cir. 1944) ("[I]t is settled law that the value of things taken in separate larcenies cannot be aggregated to make up one felonious larceny.").

The government seeks to distinguish these cases by noting that they deal with the circumstances under which several misdemeanors can amount to a felony, whereas under § 666 if the amount falls short of the statutory minimum, then the statute simply does not apply. Congress, the government says, could not have meant to "give criminals a license to steal as long as they made sure each theft was under $5,000." Yet, in its zealousness, the government has both ignored the statute and misapplied the caselaw.

Congress enacted § 666 in order "to protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery." S.Rep. No. 225, 98th Cong., 2d Sess. 369 *reprinted in* 1984 U.S.Code Cong. & Adm.News 3182, 3510. At the same time, however, Congress recognized that the statute constituted a significant intrusion of federal law enforcement into traditional areas of local concern; thus, it made the new statute applicable only to crimes involving substantial sums of money. Illegal activity involving lesser sums remains within the province of state law. Congress has not granted criminals a license to steal, but it has limited the reach of the *federal* government's law enforcement tentacles. Just as the sum of the *Billingslea* misdemeanors did not equal a felony, the sum of separate and distinct state crimes is not, under § 666, a federal one.

This does not mean, however, that individuals can escape the federal government's power under § 666 "as long as they ma[k]e sure each theft [is] under $5,000." Because aggregation is permissible where the thefts are part of a single plan, an individual who seeks to avoid the statute by so structuring his crime will find his efforts unavailing.

■ Returning to this case, it should now be clear that this court's decision to give the government's instruction at trial and withheld rulings on the aggregation issue until later was a mistake. For although defendant's requested instruction misstated the law, the government's did as well: It permitted the jury to convict—if it found that "property valued at $5,000 or more" was "embezzled, stole[n] or otherwise converted to the use of persons other than the rightful owners"—without finding that the thefts were part of a single plan. Had the court resolved the dispute before instructing the jury, it could have given a proper instruction. Because it did not, it gave an erroneous one.

This error ordinarily would require reversal of the guilty verdict. *See United*

defendant withdrawing his proposed instruction on § 666:

In considering the charge you must consider the value of each item of property individually.

Defendant Webb's Instruction # 19. Since defendant obviously was not required to present this instruction for ruling prior to trial, the government's action inducing him to withdraw it estops the government from now opposing defendant's motion.

*States v. DeGilio*, 538 F.2d 972 (3d Cir. 1976); *Cartwright v. United States*, 146 F.2d 133 at 135. The government contends, however, that the jury's guilty verdict on the conspiracy count provides the requisite "single plan" to support the § 666 verdict. This court agrees. The conviction on the conspiracy charge means that the jury found that the checks were cashed as part of a single scheme. Thus, the jury "necessarily found" that all of the elements required by § 666 were met, so the error in the § 666 instruction was harmless. *United States v. Maxwell*, 588 F.2d 568, 575 (7th Cir.1978).

*Benefits*

Defendant's final argument is that § 666 does not apply to this case because Hill Taylor did not "receive, in any one year, benefits in excess of $10,000 under a Federal program." She does not dispute that the government paid Hill Taylor more than $10,000 to administer the § 8 program, nor that the government placed more than $180,000 per year in the § 8 account from which Hill Taylor drew the funds for payment to the landlords. Instead, she argues that these funds were not "benefits" received by Hill Taylor: The former were not benefits at all, but monies paid in consideration for its services; the latter may have been "benefits" when received by the landlords, but they were not at the time they were placed in the account for Hill Taylor's administration and disbursement.

The government implicitly (and correctly) concedes that the funds HUD paid Hill Taylor to manage and administer the program do not constitute § 666 benefits. *See* § 666(c); S.Rep. No. 225, 98th Cong., 2d Sess. 369 *reprinted in* 1984 U.S.Code Cong. & Adm.News 3182, 3510. The government insists, however, that the funds HUD made available to Hill Taylor for later disbursement to the landlords were "benefits" within the meaning of the statute; indeed, the government argues, were the term "benefits" read as defendant suggests—i.e., money given directly to the beneficiary—"the government can think of no case in which [§ 666] would apply."

Like the aggregation issue, the meaning of benefits under § 666 is one of first impression. Nevertheless, § 666 cases addressing other issues reveal, at least, hyperbole in the government's position. *See U.S. v. Westmoreland*, 841 F.2d 572 (5th Cir.1988) (revenue-sharing funds to county); *United States v. Sadlier*, 649 F.Supp. 1560 (D.Mass.1986) (medicare payments to a hospital); *see also* S.Rep. No. 225, 98th Cong., 2d Sess. 369 *reprinted in* 1984 U.S. Code Cong. & Adm.News 3182, 3510 (stating that § 666 would apply to facts of *United States v. Hinton*, 683 F.2d 195 (7th Cir.1982), *aff'd sub. nom., United States v. Dixson*, 465 U.S. 482, 104 S.Ct. 1172, 79 L.Ed.2d 458 (1983), which involved HUD block grants to city). In each case, the organization (or local government agency) clearly "receive[d] ... benefits" under the federal program; that is, it received payments from the federal government, and those payments provided a benefit directly to it. To be sure, others may have benefited as well—i.e., the medicare patients. But this does not alter the fact that the organization derived a direct benefit from the federal funds. Thus, the government's argument by exaggeration is unpersuasive.

Still, this does not necessarily mean that the government's position is wrong. The few § 666 cases cited above represent only a tiny sample of the federal programs subject to § 666's sanctions. While they happen to involve programs in which it is easy to see a direct benefit to the organization-recipient, others may not. This court cannot say at this early stage in § 666 litigation that an organization or local government agency must "benefit" directly from the federal funds in order to fall within Congress' intended scope for § 666.

Nevertheless, this court can say with confidence that Hill Taylor was not the sort of organization which Congress intended to cover in enacting § 666. Not only does Hill Taylor not receive *direct* benefit from the federal funds which it administers, but it can hardly be said to "receive" anything at all. To be sure, Hill Taylor obtained access to the federal funds when HUD placed them in the § 8 account, but Hill Taylor did not control how the federal

funds would be distributed, and title to the funds remained with the United States until Hill Taylor had paid the funds over to the recipient-landlords.

This latter factor derives particular significance in light of Congress' expressed purpose in enacting § 666. The theft provision of the statute was designed to close "a serious gap in the law" resulting from the fact that:

> thefts from ... organizations or governments receiving Federal financial assistance can be prosecuted under the general theft of Federal property statute, 18 U.S. C. § 641, only if it can be shown that the property stolen is property of the United States. In many cases, such prosecution is impossible because title has passed to the recipient before the property is stolen, or the funds are so commingled that the Federal character of the funds cannot be shown.

S.Rep. No. 225, 98th Cong., 2d Sess. 369 *reprinted in* 1984 U.S.Code Cong. & Adm. News 3182, 3510. Section 666 closed the gap by making theft from organizations or governments receiving substantial amounts of federal funds a federal crime without the need to establish the federal source of the funds.

In this case, of course, the primary purpose of § 666 does not apply. The funds in the § 8 account remained federal property until Hill Taylor disbursed them, so the general theft provision, 18 U.S.C. § 641, prohibited theft of them. The legislative history of § 666 admonishes that "the term 'Federal program involving a grant, a contract, a subsidy, a loan, a guarantee, insurance, or another form of federal assistance' be construed broadly, consistent with the purpose of this section to protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud and undue influence by bribery." S.Rep. No. 225, 98th Cong., 2d Sess. 369 *reprinted in* 1984 U.S.Code Cong. & Adm. News 3182, 3511. It does not, however, require courts to stretch the term "receives ... benefits" beyond recognition, particularly where doing so would merely make § 666 redundant of other federal statutes.

This is not to say, of course, that § 666 will never apply where the federal government retains title to the funds for the purposes of § 641. Recent caselaw extending the reach of § 641, *see e.g., United States v. Wheadon,* 794 F.2d 1277, 1283–84 (7th Cir.1986), suggests that cases will arise in which theft from an organization will fall within § 641, yet the organization will be receiving benefits for the purposes of § 666. But this is not such a case. The common reading of the term "receives ... benefits," the legislative history of § 666, and the general policy of lenity in the construction of criminal laws all persuade this court that Hill Taylor was not an organization receiving benefits in excess of $10,000. Accordingly, the jury's guilty verdict against defendant on the § 666 charge must be reversed.

## CONCLUSION

Defendant's motion for a new trial and a judgment of acquittal on all counts is denied. Defendant's motion for judgment notwithstanding the verdict on the § 666 charge is granted and a judgment of acquittal on Count II is entered.