UNITED STATES of America, Appellant,

v.

John P. ROONEY, Jr., Defendant–Appellee.

No. 240, Docket 92–1229.

United States Court of Appeals, Second Circuit.

Argued Oct. 9, 1992.

Decided Feb. 18, 1993.

Paul D. Silver, Asst. U.S. Atty. (Gary L. Sharpe, U.S. Atty., of counsel, for the N.D. of N.Y., Albany, NY), for appellant.

Edward M. Shaw, New York City (Stillman, Friedman & Shaw, P.C.) for defendant-appellee.

Before: VAN GRAAFEILAND, PRATT, WALKER, Circuit Judges.

WALKER, Circuit Judge:

In a three-count indictment filed May 8, 1991, John P. Rooney, Jr. was charged in Counts I and II with violations of 18 U.S.C. § 1001 (false statements to the government) and in Count III with violating 18 U.S.C. § 666 (solicitation of a bribe). In an order dated March 20, 1992, the United States District Court for the Northern District of New York (Cholakis, *J.*) dismissed Count III on the ground that the jurisdictional element of 18 U.S.C. § 666, which requires an organization to receive $10,000 in Federal "benefits" within a twelve-month period had not been satisfied. Count III alleged as a jurisdictional predicate the receipt from the federal government of loans in excess of $10,000. But, the district court held that "benefits" within the meaning of § 666 do not include government loans. Since we hold that government loans may constitute "benefits" under § 666, we reverse the order of the district court and reinstate Count III of the indictment.

## BACKGROUND

There is no dispute as to these basic facts. Rooney is the general partner of Dawnwood Properties ("Dawnwood"). In 1978, Dawnwood applied to the Farmers Home Administration ("FmHA") for a loan to construct a rural senior citizens' housing project. In 1985, the FmHA advanced loan proceeds to Dawnwood which began construction on the project. As of 1990, Dawnwood had not yet finished the project and it owed the general contractor, Debrino Associates, a substantial sum of money for work already completed. Rooney agreed to apply to the FmHA for an additional $300,000 loan beyond the $1.5 million borrowed to that date, but only if Debrino Associates promised to build a pond on the property adjacent to the project land with-

out extra cost. Rooney's proposal to Debrino Associates is the subject of Count III which charged that the proposal was a bribe solicitation in violation of 18 U.S.C. § 666.

Before the trial, Rooney moved pursuant to Fed.R.Crim.P. 7 and 12 to dismiss Count III on jurisdictional grounds. Count III alleged as its jurisdictional predicate that Dawnwood was "an organization that received Federal assistance in the form of loans in excess of $10,000 during the one year period commencing on February 6, 1989 and ending on February 5, 1990." However, Rooney argued, *inter alia,* that government loans could not be "benefits" within the meaning of 18 U.S.C. § 666 and therefore the jurisdictional requirement of § 666 was not met.

On March 20, 1992, the district court agreed with Rooney and dismissed Count III. The court held that Dawnwood, the recipient of Federal loans totalling $1.5 million, had not received a "benefit" as required by § 666.

## DISCUSSION

Title 18, U.S.C. § 666 provides in pertinent part:

(a) Whoever, if the circumstances described in subsection (b) of this section exists—

(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—

(A) ...

(B) corruptly solicits or demands for the benefit of any person ... anything of value from the person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization ... involving anything of value of $5,000 or more ...

    *    *    *    *    *    *

shall be fined under this title, imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666.

The sole question presented by this appeal is whether a loan can be a "benefit" within the meaning of § 666(b) so as to bring this case within the Federal court's jurisdiction. If so, Dawnwood received such benefits and the jurisdictional requirement of § 666(b) is satisfied. The district court, in answering this question in the negative, relied on *United States v. Stewart,* 727 F.Supp. 1068, 1070 (N.D.Tex.1989) and *United States v. Webb,* 691 F.Supp. 1164, 1169 (N.D.Ill.1988), which concluded that § 666(b) does not apply when the government receives something in return for its money—a situation of *quid pro quo.* The district court accepted Rooney's contention that the loan repayment plus interest constitutes such a *quid pro quo,* and therefore, a loan may not be considered a benefit for purposes of § 666(b). We disagree.

■ In evaluating the scope of a Federal criminal statute, we must look closely at its language, legislative history, and purpose. *Dowling v. United States,* 473 U.S. 207, 213, 105 S.Ct. 3127, 3131, 87 L.Ed.2d 152 (1985); *United States v. Hong–Liang Lin,* 962 F.2d 251, 253 (2d Cir.1992). The Supreme Court directs us to use restraint in interpreting Federal criminal statutes based " 'on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.' " *Dowling,* 473 U.S. at 214, 105 S.Ct. at 3131 (quoting *United States v. Wiltberger,* 5 Wheat. 76, 95, 5 L.Ed. 37 (1820)).

### 1. Statutory Language

The statutory language does not support Rooney's interpretation. To fall within § 666(b), an organization must "receive[], in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." 18 U.S.C. § 666(b). The district court stated that the statute does not

expressly equate a "benefit" with a loan, and "merely provides that the Federal program from which the 'benefit' is received may *involve* a loan." (emphasis in the original).

Common sense suggests that the "benefit" from a program which involves a loan would be the loan itself. Webster defines the word "benefit," *inter alia*, as "advantage." *Webster's Ninth New Collegiate Dictionary*, 144 (1990). Rooney's receipt of the loan afforded him an "advantage" since it allowed him to build a senior citizens' housing project and hopefully make a profit.

The statute expressly equates "benefits" with "Federal assistance." Federal statutes commonly include loans within the rubric of "Federal assistance." For example, the Civil Rights Act, which prohibits discrimination under any Federally assisted programs, 42 U.S.C. § 2000d, specifically includes loans within its definition of financial assistance. *See* 42 U.S.C. § 2000d–1. In the statute we are examining, Federal programs "involving a grant, contract, subsidy, loan, guarantee, insurance" are a subset of "form[s] of Federal assistance," which therefore demonstrates that Congress considered a loan a benefit, even if Rooney does not.

Rooney contends that loan proceeds are not "benefits," since the borrower must agree to repay them, and argues that a loan can be a "benefit" only if it affords the recipient a direct economic advantage such as a reduced interest rate. This interpretation of the statute would create an anomaly: Federal jurisdiction would depend on the daily interest rate. A loan granted at a lower interest rate than the market commanded would be a benefit. But the loan would cease to be a benefit if the market rate dropped below the interest rate of the loan. The jurisdictional reach of § 666 would thus hinge upon national economic conditions and would be turned on and off by interest rate fluctuations.

2. Legislative History

Apart from its lack of support in the language of § 666, Rooney's interpretation is inconsistent with the provision's legislative history. Congress enacted § 666 as part of the Comprehensive Crime Bill of 1984, and stated that the provision was "designed to create new offenses to augment the ability of the United States to vindicate significant acts of theft, fraud, and bribery involving Federal monies that are disbursed to private organizations or State and local governments pursuant to a Federal program." S.Rep. No. 225, 98th Cong., 2d Sess. 369 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3510 (hereinafter S.Rep.). The principal policy objective behind § 666 is to "protect the integrity of the vast sums of money distributed through Federal programs." *Id.* at 3511. To this end, the Senate Judiciary Committee Report accompanying the statute states that the "[c]ommittee intends that the term 'Federal program involving a grant, a contract, a subsidy, a loan, a guarantee, insurance, or another form of Federal assistance' be construed broadly." *Id.*

The Senate Report states, however, that "not every Federal contract or disbursement of funds would be covered", and exempts from § 666 instances in which, for example, "a government agency lawfully purchases more than $10,000 in equipment from a supplier." *Id.* The district courts in *United States v. Stewart, supra*, and *United States v. Webb, supra*, seized upon this language in the Senate Committee Report to preclude § 666 from applying to all situations in which the government receives a tangible material return from its funds. *Stewart*, 727 F.Supp. at 1070; *Webb*, 691 F.Supp. at 1169. However, in light of the statute's purpose, we think that Congress only intended to exclude money spent by the government as a commercial entity, such as payments for supplies or equipment. *Stewart* is consistent with this reading since that case involved a defense contractor that supplied custom-made goods to the government, which in essence is a purchase of equipment from a supplier. 727 F.Supp. at 1070.

The *Webb* court held that funds paid by the Department of Housing and Urban Development ("HUD") to a private account-

ing firm to manage and administer a Federal program were not § 666(b) benefits. Rather, the *Webb* court held, the funds were "monies paid in consideration for its services." 691 F.Supp. at 1169. While we express no opinion as to what the result in *Webb* should have been, we believe that the *Webb* court's construction of the limitation on "benefit" was broader than the facts of that case required, broader than Congress intended, and contrary to the stated purpose of § 666. As we have noted, § 666 was designed to protect the integrity of funds distributed through Federal programs. S.Rep. at 3510. The Senate Report targeted the application of the statute to monies distributed through "Federal programs" for which there is "a specific statutory scheme authorizing the Federal assistance in order to promote or achieve certain policy objectives." *Id.* at 3511. The Report enumerated three cases to illustrate situations § 666 is intended to include: *United States v. Hinton*, 683 F.2d 195 (7th Cir.1982), *aff'd sub nom. Dixson v. United States*, 465 U.S. 482, 104 S.Ct. 1172, 79 L.Ed.2d 458 (1984) (involving bribery by an employee of non-profit corporation with contract to administer HUD funds); *United States v. Mosley*, 659 F.2d 812 (7th Cir.1981) (involving bribery by a State administrator of funds from CETA program); and *United States v. Del Toro*, 513 F.2d 656 (2d Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975) (involving bribery of city employees administering funds from HUD program). S.Rep. at 3511. In each of these cases, the organization or city agency provided the Federal government with a service by administering a government program. Thus, the holding in *Webb* is in conflict with the legislative history.

■ We find that the district court's focus on whether the Federal government receives something of value for its funds is misplaced. The inquiry is not whether there is a *quid pro quo*, but, rather, whether the funds disbursed can be considered Federal assistance within a specific statutory scheme intended to promote public policy objectives and not payments by the government as a commercial entity.

■ As discussed above, loans are a common vehicle for distributing Federal assistance. Rooney received the loans from the FmHA pursuant to Section 515 of the Housing Act of 1949, codified at 42 U.S.C. § 1485. Section 1485(a) authorizes loans to provide housing for "elderly or handicapped persons or families of low or moderate income or other persons and families of low income in rural areas...." The FmHA granted Dawnwood the loan to construct rural low-income housing. Therefore, the funds Rooney received from the Federal government were authorized according to a statutory scheme in order to promote Congress's public policy objective of providing low-cost rural housing, and are exactly the type of monies Congress intended to protect when it enacted § 666. We hold that Dawnwood received a benefit from the FmHA loans under § 666(b). Accordingly, the statute's jurisdictional requirement is satisfied as to Rooney.

### CONCLUSION

We reverse the order of the district court and reinstate Count III of the indictment.