104 F.3d 350
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES OF AMERICA, Appellee,
v.
John DRANSFIELD, Defendant-Appellant.
 No. 96-1118.
 United States Court of Appeals, Second Circuit.
 Sept. 24, 1996.
 
 APPEARING FOR APPELLANT:David A. Blythewood, Reisch, Simoni, Blythewood & Gleason, Garden City, NY.
 APPEARING FOR APPELLEE:Andrew Jay Hinton, Assistant United States Attorney for the Eastern District of New York, Brooklyn, NY.
 Before MINER, JACOBS and PARKER, Circuit Judges.
 
 
 1
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Eastern District of New York, it is hereby
 
 
 2
 ORDERED, ADJUDGED, AND DECREED that the judgement be and hereby is AFFIRMED.
 
 
 3
 This cause came on to be heard on the transcript of record and was argued by counsel.
 
 
 4
 Defendant-appellant John Dransfield appeals from a judgment entered in the United States District Court for the Eastern District of New York (Johnson, J.) convicting him, following a plea of guilty, of bribery, in violation of 18 U.S.C. § 666, and structuring currency transactions, in violation of 31 U.S.C. § 5324. The district court sentenced him to a 37-month term of imprisonment, a five-year term of supervised release, and a $100 special assessment.
 
 
 5
 On May 20, 1991, the Port Authority of New York and New Jersey ("Port Authority") applied for a series of grants from the Federal Aviation Administration ("FAA") in order to initiate a noise abatement project at two schools near John F. Kennedy International Airport and LaGuardia Airport.[1] The noise abatement was to be accomplished by installing sound-proof windows at the schools. The applications resulted in four Grant Agreements, two for each project.
 
 
 6
 On July 31, 1991, the New York City School Construction Authority ("SCA") entered into two virtually identical contracts with the Port Authority to administer the federal funds received by the Port Authority for the noise abatement project. The SCA is a "public benefit corporation" whose purpose is to "manage the acquisition, design, construction and major rehabilitation of New York City schools." N.Y. Pub. Auth. §§ 1725, 1727(1). The SCA is governed by a three-person board of trustees, with the governor and mayor of New York City each selecting one of the trustees.
 
 
 7
 The federal involvement in the project was noted throughout the contracts. For instance, the Preamble to each contract states:
 
 
 8
 WHEREAS the Authority has a grant agreement with the Secretary of Transportation ("the Secretary") of the United States which will provide funding to reduce aircraft noise at P.S. 42 ("the Project") and has offered to apply the funding to the Project and the Board is agreeable that aircraft noise reduction be performed at said school....
 
 
 9
 Further, the SCA agreed to include in all contracts for consultation services that "[t]he Work to be performed pursuant to this Agreement shall be paid for in part with Federal Aviation Administration ("FAA") funds." Finally, the contracts stated that "construction shall not begin until all Federal and Port Authority funding is available," making the receipt of federal funds a condition precedent to the initiation of construction on the project.
 
 
 10
 In administering the noise abatement project, Dransfield, a project manager for the SCA, participated in a bid-rigging scheme. The scheme lasted from February of 1992 through April of 1993. Dransfield accepted payments in excess of $5,000 in exchange for his assistance in awarding contracts and expediting payment on those contracts.
 
 
 11
 Following his arrest on April 20, 1993, Dransfield entered a plea of guilty to a superseding information charging him with receiving bribes, in violation of 18 U.S.C. § 666, and structuring currency transactions, in violation of 31 U.S.C. § 5324. Prior to sentencing, Dransfield moved to dismiss the first count of the bribery charge for lack of subject matter jurisdiction. Dransfield contended that the SCA did not qualify under the statute as an "organization, government, or agency receiv[ing], in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance." 18 U.S.C. § 666(b). Following a hearing, the district court denied the motion.
 
 
 12
 On February 8, 1996, the day before sentencing, the Office of the Inspector General of the SCA faxed a "victim impact letter" to the district court. Upon learning of this letter, Dransfield objected to its use in sentencing and its inclusion in his file, arguing that allegedly inaccurate allegations in the letter might negatively affect him with regard to future decisions by the Bureau of Prisons. Dransfield requested that the letter be expunged from his file. The district court denied Dransfield's request, but permitted Dransfield to respond to the SCA's letter through his own submission to the file. The district court subsequently sentenced Dransfield principally to a 37-month term of imprisonment. This appeal followed.
 
 
 13
 Dransfield first claims that the jurisdictional language, "receiv[ing] ... under a Federal program," 18 U.S.C. § 666(b), requires direct receipt of federal funds. This argument is without merit.
 
 
 14
 When interpreting a statute, we "look closely to [the statute's] language, legislative history, and purpose." United States v. Rooney, 37 F.3d 847, 851 (2d Cir.1994). Here, the language of the statute is silent with respect to whether direct receipt of federal funds is required under 18 U.S.C. § 666(b). However, the legislative history of the statute indicates that the conduct in this case was intended to be covered by § 666, as is shown by Congress' reference to United States v. Hinton, 683 F.2d 195 (7th Cir.1982), aff'd sub nom. Dixon v. United States, 465 U.S. 482 (1984), a virtually identical case. As in this case, Hinton involved a city contracting with an independent entity to administer federal grant money. Section 666 was enacted to ensure that this type of corruption, occurring at the level of the SCA, did not escape punishment because of gaps in the then-existing legal framework. See S.Rep. No. 225, 98th Cong., 2d Sess. 369-70 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3510-11. Therefore, we find that the SCA did "receive[ ] ... benefits under a Federal program" for the purposes of establishing subject matter jurisdiction.
 
 
 15
 In the alternative, Dransfield contends that, even if the "receiv[ing] ... under a Federal program" requirement is met, the SCA is exempt under 18 U.S.C. § 666(c). Subsection (c) provides that § 666 "does not apply to bona fide salary, wages, fees or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. § 666(c). However, there was no employment relationship giving rise to wages or salary, and the disbursement of funds to the SCA represented "Federal assistance within a specific statutory scheme intended to promote public policy objectives." United States v. Rooney, 986 F.2d 31, 35 (2d Cir.1993). As such, subsection (c) is inapplicable.
 
 
 16
 Finally, Dransfield contends that the district court abused its discretion in denying his request for expungement of the SCA letter. We also reject this argument. Expungement is within the equitable discretion of the court, and should only be exercised in the most extreme circumstances. United States v. Schnitzer, 567 F.2d 536, 539-40 (2d Cir.1977), cert. denied, 435 U.S. 907 (1978). Given the alternatives available to Dransfield to protect himself from unfair treatment caused by any inaccuracy in the letter, the district court properly exercised its discretion in denying Dransfield's request.
 
 
 
 [1]
 The noise abatement program qualifies for federal assistance under 49 U.S.C. § 47504(c)(2)(D)