United States Court of Appeals,

Eleventh Circuit.

No. 96-8404.

UNITED STATES of America, Plaintiff-Appellee,

v.

Virgil M. COPELAND, John J. Winders, Defendants-Appellants.

June 18, 1998.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:93-CR-164-1), Owen Forrester, Judge.

Before COX, DUBINA and BLACK, Circuit Judges.

BLACK, Circuit Judge:

Appellants Virgil M. Copeland and John J. Winders appeal their convictions for accepting and making illegal kickbacks and bribes and for filing false tax returns. We vacate their convictions for bribery under 18 U.S.C. § 666 and § 2, but affirm their convictions on all other counts.

## I. BACKGROUND

From the early 1980s until 1992, Appellant Virgil M. Copeland served as a manager in the Facilities Operations Division of the Marietta, Georgia, plant of Lockheed Aeronautical Systems Company (Lockheed). Copeland's responsibilities at Lockheed included finding off-site space for Lockheed to lease, arranging for the relocation of transferred Lockheed executives, and choosing contractors to perform building, maintenance, and repair projects.

Appellant John J. Winders was a licensed real estate appraiser and broker who assisted Lockheed in acquiring real estate and off-site lease premises. Winders and Copeland have been friends for over 20 years, and between 1991 and 1994, Winders earned approximately $100,000 in commissions from Lockheed-related business that Copeland referred to him.

Appellants' convictions stem from their involvement in a series of transactions in which Copeland improperly referred work to Winders and agreed on behalf of Lockheed to pay abnormally high commissions to Winders. In return, Winders paid Copeland approximately $15,000. In addition to his dealings with Winders, Copeland accepted payments from Robert Sherwood, a self-employed contractor to whom Copeland awarded several Lockheed construction projects, and William Mann, the owner of several contracting and construction companies that performed work for Lockheed.

Following a jury trial, Copeland was convicted of five counts of accepting kickbacks, in violation of 41 U.S.C. §§ 52-54 (Counts IV-V, VII-IX), five counts of bribery, in violation of 18 U.S.C. § 666 and § 2 (Counts X-XI, XIII-XV), and three counts of filing false tax returns, in violation of 26 U.S.C. § 7206(1) (Counts XVII, XXI-XXII). Winders was convicted under the same statutory provisions of three counts of providing kickbacks (Counts VII-IX), three counts of bribery (Counts XIII-XV), and one count of filing a false tax return (Count XVI).

On appeal, Appellants assert, among other claims, that the Government failed to prove the statutory prerequisites of 18 U.S.C. § 666.[1] We agree, and therefore vacate the Defendants' bribery convictions and remand to the district court for resentencing consistent with this opinion.

## II. DISCUSSION

---

[1] On appeal, Copeland raises the following additional claims: (1) extrinsic evidence was improperly introduced into the jury room; (2) his rights under the Speedy Trial Act were violated; (3) the evidence was insufficient to support the Anti-Kickback Act convictions; and (4) the court made various errors in sentencing. Winders likewise asserts several additional claims: (1) the district court improperly failed to sever his trial from Copeland's trial; (2) the evidence was insufficient to support the Anti-Kickback Act convictions; (3) his due process rights were violated by an improper amendment to the indictment; (4) the court improperly admitted character evidence; and (5) the court improperly instructed the jury. After careful consideration of each of these claims, we affirm the judgment of the district court. *See* 11th Cir. R. 36-1.

The Anti-Bribery Act, 18 U.S.C. § 666, prohibits the unlawful acceptance or offering of anything of value of $5,000 or more, if the person taking the bribe is an agent of an organization subject to the statute.[2] 18 U.S.C. § 666(a). Whether an organization falls within the scope of the statute is determined pursuant to § 666(b), which provides:

> The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666(b). In the present case, the Government alleges that Lockheed is an organization within the scope of the statute because it is a prime contractor for the United States Department of

_____

[2]Section 666(a) provides:

> Whoever, if the circumstance described in subsection (b) of this section exists—
>
> (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
>
> (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—
>
> (i) is valued at $5,000 or more, and
>
> (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or
>
> (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more; or
>
> (2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more; shall be fined under this title, imprisoned not more than 10 years, or both.

Defense. In response, Appellants argue that a quid pro quo contractual relationship does not satisfy the requirements of § 666(b).

In determining whether Lockheed falls within the scope of § 666(b), we must consider the statute's text, legislative history, and purpose. *See United States v. Rooney,* 986 F.2d 31, 33 (2d Cir.1993) (citing *Dowling v. United States,* 473 U.S. 207, 213, 105 S.Ct. 3127, 3131, 87 L.Ed.2d 152 (1985)). In so doing, we recognize that "[c]ourts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language." *Salinas v. United States,* --- U.S. ----, ----, 118 S.Ct. 469, 474, 139 L.Ed.2d 352 (1997) (internal quotations and citations omitted).

Section 666(b) provides that the benefits an organization receives under a federal program can be in the form of "a grant, *contract,* subsidy, loan, guarantee, insurance, or other form of Federal *assistance.*" 18 U.S.C. § 666(b) (emphasis added). A straightforward reading of this text indicates that § 666(b) encompasses many situations in which the government receives consideration in return for federal assistance. *See United States v. Marmolejo,* 89 F.3d 1185, 1189-91 (5th Cir.1996) (applying § 666 to a county jail that received federal assistance in exchange for housing federal inmates), *affirmed in part sub nom. Salinas v. United States,* --- U.S. ----, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997); *Rooney,* 986 F.2d at 33-35 (holding that a government sponsored loan qualified as a benefit under a federal program, even though the recipient was required to repay the entire loan plus interest).

The scope of § 666, however, is not limitless; the statute clearly indicates that only those contractual relationships constituting some form of "Federal assistance" fall within the scope of the statute. 18 U.S.C. § 666(b); *see Rooney,* 986 F.2d at 34 (stating that "[t]he statute expressly equates "benefits' with "Federal assistance.' "). Thus, organizations engaged in purely commercial transactions with the federal government are not subject to § 666. *See United States v. Stewart,* 727

F.Supp. 1068, 1072-73 (N.D.Tex.1989) (holding that defense contractor was not an organization within the scope of § 666 because it was engaged in purely commercial transactions with the government); *see also Marmolejo,* 89 F.3d at 1190; *Rooney,* 986 F.2d at 34-35.[3]

Having reached this conclusion based on a plain reading of § 666(b), we normally would not engage in any additional analysis. However, since some circuits have found § 666(b) to be ambiguous on its face, it is worth noting that our conclusion is consistent with the statute's legislative history, which provides in part:

> [T]he term "Federal program involving a grant, a contract, a subsidy, a loan, a guarantee, insurance, or another form of Federal assistance' [is to] be construed broadly, consistent with the purpose of this section to protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery. However, the concept is not unlimited. The term "Federal program' means that there must exist a specific statutory scheme authorizing the Federal assistance in order to promote or achieve certain policy objectives. Thus, not every Federal contract or disbursement of funds would be covered. For example, if a government agency lawfully purchases more than $10,000 in equipment from a supplier, it is not the intent of this section to make a theft of $5,000 or more from the supplier a Federal crime.

S. Rep. 98-225 at 370 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3511; *see also Stewart,* 727 F.Supp. at 1070-71 (citing report). This passage shows that Congress did not intend the statute to

---

[3]The Government's contention that the Fifth Circuit's decision in *United States v. Marmolejo,* 89 F.3d 1185 (5th Cir.1996), abrogated the district court's decision in *United States v. Stewart,* 727 F.Supp. 1068 (N.D.Tex.1989), lacks merit. In *Marmolejo,* the Fifth Circuit concluded that the "fact that the government received something in return for the assistance it provided" did not preclude a finding that the county received benefits under a federal program. *Marmolejo,* 89 F.3d at 1190-91. The Government contends that this finding conflicts with the holding in *Stewart. Stewart,* however, turned not on the fact that a quid pro quo relationship existed between the involved entity and the government, but on the fact that the quid pro quo contractual relationship was purely commercial in nature and lacked any semblance of federal assistance under a federal program. *Stewart,* 727 F.Supp. at 1072. Thus, both *Stewart* and *Marmolejo* support the conclusion that § 666 does not apply to purely commercial transactions. *See Rooney,* 986 F.2d at 34 (noting that *Stewart* is consistent with the view that purely commercial transactions, but not all quid pro quo relationships, fall outside the scope of § 666(b) since "[*Stewart* ] involved a defense contractor that supplied custom-made goods to the government, which in essence is a purchase of equipment from a supplier.").

apply to the federal government's ordinary commercial transactions.[4]

Based on a plain reading of the statute, we conclude that the Government failed to prove that Lockheed is an organization that receives benefits pursuant to a federal program as required by § 666(b). Nothing in the record indicates that Lockheed receives any form of federal assistance or is in anyway engaged in something other than purely commercial transactions with the government. The Government attempts to distinguish defense contracts from other commercial transactions by noting that the government provides Lockheed with detailed specifications for aircraft and that Congress annually appropriates specific sums for aircraft procurement, testing, and research and development. Although these factors make defense contracts unique, they do not show that Lockheed received benefits under a federal program through a contract or any other form of federal assistance. *See Stewart,* 727 F.Supp. at 1072. Punishing the Appellants' conduct might further the statute's goal of protecting the integrity of federal funds, but it is not the role of this Court to expand the scope of § 666 to encompass such behavior. *Id.* at 1073 (citing *United States v. Bowman,* 260 U.S. 94, 102, 43 S.Ct. 39, 42, 67 L.Ed. 149 (1922)).[5]

### III. CONCLUSION

---

[4]The legislative history also makes reference to three previously adjudicated cases to which Congress intended § 666 to apply. *See* S. Rep. 98-225 at 370 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3511; *see also Stewart,* 727 F.Supp. at 1070-71. Although the facts of those cases do not encompass all the situations to which the statute should apply, none of the cases suggest ordinary commercial transactions fall within the scope of the statute. *Stewart,* 727 F.Supp. at 1070-71; *see also Rooney,* 986 F.2d at 35.

[5]We note that the Supreme Court's recent decision in *Salinas v. United States,* --- U.S. ----, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), does not affect our conclusion in this case. *Salinas* dealt with the issue of whether the alleged bribery must affect or involve federal funds. *Id.* at ----, 118 S.Ct. at 473. The Supreme Court unanimously concluded that the bribery does not need to have a specific impact on federal funds, so long as the involved organization or governmental agency received federal funding as required by § 666(b). *Id.* at ----, 118 S.Ct. at 474. *Salinas* therefore does not address the issue raised by the present case.

The Government failed to prove that Lockheed is an organization that received, in any one year period, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance. Accordingly, we vacate the Defendants' convictions for bribery under 18 U.S.C. § 666 and § 2, affirm their convictions in all other respects, and remand for resentencing consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.